UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
LENA LASHER,

        Petitioner,

   - against -

UNITED STATES OF AMERICA,

        Respondent.
------------------------------X

**MEMORANDUM AND ORDER**

17 Civ. 5925 (NRB)
12 Cr. 868 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On May 15, 2015, petitioner Lena Lasher ("Lasher") was convicted of misbranding prescription drugs, conspiracy to misbrand prescription drugs, conspiracy to commit mail and wire fraud, mail fraud, and wire fraud. This Court sentenced her to 36 months' imprisonment followed by two years' supervised release, and ordered forfeiture of $2.5 million. The Second Circuit affirmed Lasher's conviction and sentence on September 2, 2016, and the Supreme Court denied her petition for certiorari on June 12, 2017.

Proceeding pro se, Lasher filed a habeas corpus petition to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255, asserting that there was insufficient evidence to support her fraud conviction, that the Government violated her right to due process, and that she received ineffective assistance from her

1

trial counsel. Mot. to Vacate, August 4, 2017, ECF No. 347 ("Habeas Pet."). Lasher has also filed numerous additional motions in support of this petition. See ECF Nos. 354, 356, 358, 368, 369, 371, 372, 377, 378, 380, 382, 383, 384, 385, 386, 387, 389, 390, 393, 402, 404. For the following reasons, the § 2255 petition is denied without a hearing, and each of the supplementary motions is also denied.

## BACKGROUND

Lasher was a supervising pharmacist at Hellertown Pharmacy and Palmer Pharmacy, both located in Pennsylvania. She was charged by indictment along with nine co-defendants for her role in an internet pharmacy scheme that filled thousands of prescriptions for barbiturates, opioids, and muscle relaxants by doctors who had never met or consulted their patients. Indictment, Nov. 20, 2012, ECF No. 2. The original indictment contained seven counts: (1) narcotics conspiracy under 21 U.S.C. §§ 841 and 846; (2) narcotics distribution under 21 U.S.C. § 841; (3) conspiracy to misbrand under 18 U.S.C. § 371; (4) misbranding under 21 U.S.C. §§ 331(a), 333(a)(2), and 353(b); (5) conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349; (6) international money laundering conspiracy under 18 U.S.C. § 1956(h); and (7) domestic money laundering conspiracy under 18 U.S.C. § 1956(h). Id.

Lasher moved to dismiss the indictment as legally insufficient. Mot., May 8, 2014, ECF No. 151. The Court denied this motion, holding: (1) Fioricet is a controlled substance under the Controlled Substances Act despite being subject to certain specific and limited regulatory exemptions; (2) the indictment adequately alleged that the prescriptions were issued outside a bona fide physician-patient relationship; and (3) the indictment adequately alleged specific intent. Order, Aug. 21, 2014, ECF No. 171.

Eight of Lasher's co-defendants pleaded guilty. The ninth is believed to be living abroad and has never appeared in this case. Lasher alone decided to go to trial. Before trial, the Government filed a superseding indictment charging Lasher with (1) conspiracy to misbrand under 18 U.S.C. § 371; (2) misbranding under 21 U.S.C. §§ 331(a) and 333(a)(2); (3) conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349; (4) mail fraud under 18 U.S.C. § 1341; (5) wire fraud under 18 U.S.C. § 1343; and (6) witness tampering under 18 U.S.C. § 1512. Superseding Indictment, Apr. 2, 2015, ECF No. 209.[1]

The trial began on May 4, 2015 and lasted two weeks. At trial, the Government presented evidence that Lasher and her co-

---

[1] Notably, the operative indictment did not charge Lasher with the distribution of controlled substances or conspiracy to distribute controlled substances.

defendants perpetrated an internet pharmacy scheme.  That is, customers would visit any of a number of websites offering prescription drugs for sale (including opioids and muscle relaxants), fill out a short questionnaire with questions about their medical history, and a doctor would issue the prescription without ascertaining the validity of any of the answers to the questionnaires.  These prescriptions would be transmitted to one of several pharmacies, including the ones where Lasher worked, and the pharmacies would fill the prescriptions and send the drugs to customers around the country.  One government witness, the Executive Director of the National Association of Boards of Pharmacy, testified that the questionnaires relied on by Lasher were obviously insufficient, and appeared to be merely an effort to make it look like legitimate doctor-patient relationships existed.

The Government presented documentary evidence that Lasher supervised the two pharmacies, was responsible for responding to governmental inspections, and had the ability to fire employees. The Government presented evidence that Lasher and her employees poured pills into vials without counting them, re-dispensed returned medication to new customers without properly inspecting the pills, and altered the instructions on pharmacy labels such that they did not correspond to what any physician had ordered.

One witness testified that she was a drug addict whose own doctor had refused to fill her prescriptions for tramadol but was then able to order this drug online from Hellertown Pharmacy.

One of the Government's exhibits showed that these two pharmacies filled a total of 2,100 prescriptions in a single day, and further evidence showed that 95-99% of the prescription drugs shipped out of the pharmacies were Fioricet, tramadol, Soma, and muscle relaxants. The Government also presented evidence that Lasher installed strict rules in her pharmacies: the employees were punished if they talked, took a break, or called in sick, and Lasher set a quota of five totes of tramadol or Fioricet per day for each pharmacist and technician. For at least some period of time, Lasher received a commission for each prescription filled. The Government argued that the strict conditions imposed and focus on volume were evidence of a "classic pill mill."

The Government also presented evidence that Lasher took efforts to conceal the illegal activity occurring in her pharmacies. Another government witness, one of Lasher's former employees, testified that Lasher told him not to speak with an individual inspecting the pharmacy. The witness testified that after he spoke honestly with the inspector, and the pharmacy consequently failed the inspection, Lasher then directed him to

draft a letter, which she edited, telling the inspector that he had repeatedly lied during the inspection.

The defense then presented its case, calling one character witness and Lasher, who testified in her own defense. Lasher testified that she properly instructed her employees about pill-dispensing practices, and would call the prescribing doctor or the police if she suspected an issue with customers or their prescriptions. Lasher also stated that she personally spoke on several occasions with two doctors who provided prescriptions over the internet. On rebuttal, the Government called one of these doctors, who testified that she never spoke with Lasher or anyone at either Hellertown Pharmacy or Palmer Pharmacy.

After a two-week trial, the jury began deliberations on May 15, 2015, and returned a verdict that same day, finding Lasher guilty of conspiracy to misbrand, misbranding, conspiracy to commit mail fraud and wire fraud, mail fraud, and wire fraud, and not guilty of witness tampering. On September 2, 2015 Lasher was sentenced by this Court to 36 months' imprisonment, two years' supervised release, and forfeiture of $2.5 million. The Second Circuit affirmed Lasher's conviction and sentence on September 2, 2016, United States v. Lasher, 661 F. App'x 25 (2d Cir. 2016), and the Supreme Court denied her petition for certiorari on June 12, 2017, Lasher v. United States, 137 S. Ct. 2254 (2017).

In addition to her direct appeal and this habeas petition, Lasher has filed malpractice actions against her trial attorney, the retained counsel who represented her on appeal, and the attorney she hired to defend her pharmacist license, Lasher v. Freeman, No. 17 Civ. 6388 (NRB) (S.D.N.Y.); Lasher v. Stavis, No. 17 Civ. 6632 (JPO) (S.D.N.Y.); Lasher v. Brent, No. 17 Civ. 4117 (JFL) (E.D. Pa.); actions in the District of Nebraska, District of New Jersey, District of Oregon, and Middle District of Pennsylvania against those states' respective Boards of Pharmacy challenging the revocation of her pharmacist license, Lasher v. Nebraska State Board of Pharmacy, No. 17 Civ. 3125 (RGK) (D. Neb.); Lasher v. Efremoff, No. 18 Civ. 525 (MC) (D. Or.); Lasher v. Rubinaccio, No. 18 Civ. 2689 (ES) (JAD) (D.N.J.); Lasher v. Pennsylvania State Board of Pharmacy, No. 17 Civ. 1546 (CCC) (M.D. Pa.); an appeal with the Department of Health and Human Services' Departmental Appeals Board and a further appeal with the District Court for the District of Columbia regarding her exclusion from all federal health care programs for 10 years, Lasher v. Department of Health & Human Services, No. 17 Civ. 1746 (ABJ) (D.D.C.), separate Bivens actions against the DEA agents who investigated her case and the undersigned, Lasher v. Popowich, No. 17 Civ. 12061 (ES) (JAD) (D.N.J.); Lasher v. Buchwald, No. 18 Civ. 1829 (CM) (S.D.N.Y.); a motion to disqualify the undersigned from this case, Mot., Dec.

18, 2017, ECF No. 373, and a judicial misconduct claim against the undersigned.[2] Lasher has also filed eight separate appeals with the Second Circuit, one appeal each with the Eighth and Ninth Circuits, as well as two petitions for certiorari, a petition for rehearing, and numerous additional motions with the Supreme Court. Lasher has not obtained relief in any of these proceedings.

In her initial habeas petition, Lasher argued that her conviction was based on insufficient evidence and that her trial lacked due process, and proffered several reasons why her counsel was constitutionally ineffective. Habeas Pet. Lasher has since filed a near-constant stream of supplementary briefing, including two motions for relief based on the Supreme Court's decision in Honeycutt v. United States, 137 S. Ct. 1626 (2017), and several requests for an evidentiary hearing. See ECF Nos. 354, 356, 358, 368, 369, 371, 372, 377, 378, 380, 382, 383, 384, 385, 386, 387, 389, 390, 402, 404.

## DISCUSSION

Pro se litigants are "entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79

---

[2]     The Government represents that Lasher has also filed suit in state court against several of the individuals who testified against her. See Mem. of Law at 1, Sept. 22, 2017, ECF No. 359; Letter, July 3, 2018, ECF No. 397.

(2d Cir. 1996)).  However, <u>pro se</u> <u>habeas</u> petitioners must still prove the unconstitutionality of their sentences under Section 2255 by a preponderance of the evidence.  <u>See</u> <u>Triana v. United States</u>, 205 F.3d 36, 40 (2d Cir. 2000).

A habeas petitioner is entitled to a hearing on his petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  However, courts have broad discretion when deciding if a collateral attack brought pursuant to 28 U.S.C. § 2255 requires an evidentiary hearing.  <u>Chang v. United States</u>, 250 F.3d 79, 85-86 (2d Cir. 2001) (affirming dismissal of Section 2255 petition without hearing).  It is the responsibility of the district court to "determine[] whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a <u>prima facie</u> case for relief."  <u>Puglisi v. United States</u>, 586 F.3d 209, 213 (2d Cir. 2009).  Petitions based on vague or conclusory allegations, or allegations conclusively contradicted by the record, may be dismissed without a hearing.  <u>See</u> <u>id.</u> at 218; <u>Chang</u>, 250 F.3d at 85.

## I.  Insufficient Evidence

Lasher first argues that there was insufficient evidence to support her conviction beyond a reasonable doubt.  When there is

a challenge to the sufficiency of the evidence supporting a conviction, the Court "will uphold a conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Dupree, 870 F.3d 62, 78 (2d Cir. 2017) (quoting United States v. Rosemond, 841 F.3d 95, 113 (2d Cir. 2016)). This insufficiency argument previously formed one of Lasher's primary bases for relief on direct appeal, and it was rejected by the Second Circuit. United States v. Lasher, 661 F. App'x 25, 27 (2d Cir. 2016). The Second Circuit has already disposed of this claim, and Lasher cannot now exhume it for the purposes of her habeas petition. See United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (quoting United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001)) ("It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"). "A motion under § 2255 is not a substitute for appeal," and Lasher "may not now challenge the sufficiency of the evidence by collateral attack." United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998).

Even if not precluded, this argument would not form the basis for relief. Lasher's primary insufficiency argument appears to be that the Government treated Fioricet interchangeably with butaltibal, which she argues is misleading because butalbital is a controlled substance and Fioricet is not. Habeas Pet. at 6-9;

see also Pet., Jan. 8, 2018, ECF No. 377; Mot. at 2-3, Jan. 3, 2018, ECF No. 378; Mot., Mar. 16, 2018, ECF No. 382; Pet., Mar. 19, 2018, ECF No. 383; Pet., Mar. 19, 2018, ECF No. 384; Mot., Mar. 19, 2018, ECF No. 386; Mot., Aug. 15, 2018, ECF No. 404. This argument has no basis in the record, and, even if correct, would not support vacating the conviction for lack of sufficient evidence.

While the original indictment contained charges for delivering, distributing, and dispensing controlled substances and conspiracy to do the same, these charges were dropped from the operative superseding indictment. Superseding Indictment, Apr. 2, 2015, ECF No. 209. Accordingly, this argument is irrelevant to the charges on which Lasher was actually tried, and cannot form the basis for habeas relief.

In addition, Lasher unsuccessfully tried to raise this argument in her motion to dismiss the controlled substances charges in the original indictment. See Mem. of Law at 3-15, May 8, 2014, ECF No. 152 (listing "Butalbital and Fioricet are Not Interchangeable Drug Names" as the heading for Point I.A). In denying that motion, the Court accurately described Fioricet as "a combination drug containing the schedule III controlled substance Butalbital." Mem. & Order at 4-5, Aug. 21, 2014, ECF No. 171. Noting that Fioricet is subject to certain regulatory exemptions,

11

the Court held that it was exempt for administrative purposes only and that Fioricet was nonetheless properly classified as a controlled substance for the purposes of the criminal provisions of the Controlled Substances Act. Id. at 5-13. We therefore rejected Lasher's contention that Fioricet is not a controlled substance.

## II. Due Process

Lasher next argues that the Government's failure to provide her with certain video evidence constitutes a Brady violation and a violation of her due process rights under the Fourteenth Amendment. Habeas Pet. at 9-11; see also Pet., Nov. 7, 2017, ECF No. 371; Pet. at 3, Jan. 8, 2018, ECF No. 377; Mot. at 4-5, Jan. 3, 2018, ECF No. 378. Specifically, Lasher asserts that video from Towne Pharmacy would show that she was not physically there on certain dates. Lasher already made this argument in a post-trial "petition to compel exculpatory evidence" that was rejected by this Court, see Order, Mar. 28, 2017, ECF No. 324, and it fares no better as a basis for habeas relief.

Lasher again provides no credible basis to suggest that the Government failed to fulfill its Rule 16 or Brady disclosure obligations at trial. To the extent that Lasher is requesting discovery that she did not receive at trial, post-conviction discovery requires a showing of good cause, i.e. that she has made

12

specific allegations that if fully developed entitle her to relief. See Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts; Cardoso v. United States, 642 F. Supp. 2d 251, 265 (S.D.N.Y. 2009). That is certainly not the case here. Even assuming arguendo that Lasher's description of the content of the video is correct, there is no likelihood that it would have had a material effect on the outcome of this case. Lasher asserts that the video evidence is from Towne Pharmacy, but the Government's case was based on Lasher's conduct as pharmacist at two different pharmacies: Hellertown Pharmacy and Palmer Pharmacy. See Trial Tr. 216-18, 224-26, 390, 432-33, 437-43, 757-62, ECF Nos. 234, 236, 240. As Lasher's convictions were not premised on her activity at Towne Pharmacy, video from that pharmacy is facially irrelevant to any post-conviction relief that could be afforded her. Moreover, Lasher was not charged with committing her crimes alone, but rather as a member of a conspiracy, so the fact that she was not physically present when certain prescriptions for pain medication were filled would not have provided her with a defense.

### III. Ineffective Assistance

We next address Lasher's allegations that her attorney at trial, Louis Freeman, provided constitutionally deficient assistance by failing to bring video evidence to the jury's

13

attention, challenge the amount of forfeiture, call certain witnesses, seek telephone records, present a "reliance of in-house counsel" argument, and object to the admissibility of certain testimony and evidence.

To prevail on a Sixth Amendment claim of ineffective assistance of counsel, "a habeas petitioner must demonstrate that: (1) [her] counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." McCoy v. United States, 707 F.3d 184, 187 (2d Cir. 2013) (citing United States v. Strickland, 466 U.S. 668, 687-88 (1984)). The Court must accord a "strong presumption" that counsel's decisions were reasonable under the circumstances and constitute "sound trial strategy." Strickland, 466 U.S. at 689. To establish prejudice, a petitioner must show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "[T]he likelihood of a different result in the absence of the alleged deficiencies in representation 'must be substantial, not just conceivable.'" Waiters v. Lee, 857 F.3d 466, 469 (2d Cir. 2017) (quoting Harrington v. Richter, 562 U.S. 86, 112 (2011)).

Initially, we emphasize that Lasher was more than ably represented by Louis Freeman at trial, and, as discussed below, counsel's representation never fell below an objective standard of reasonableness. Further, given the overwhelming evidence of Lasher's guilt presented at trial, the challenged actions by her counsel, even if unreasonable (which they were not), would not have detracted from the ample evidence supporting guilt. <u>See id.</u> (quoting <u>Lindstadt v. Keane</u>, 239 F.3d 191, 204 (2d Cir. 2001) ("Where a conviction is 'supported by overwhelming evidence of guilt,' habeas relief on the ground of ineffective assistance is generally not warranted.").

### a. Video Evidence

Lasher first argues that her counsel should have addressed the supposedly suppressed video evidence that forms the basis for her due process claim discussed above. Habeas Pet. at 12-13. This argument is illogical on its face. Lasher asserts that her counsel should have "provid[ed] the knowledge of the suppressed exculpatory evidence, which at the time were unable to prove was in the custody of the government, as the government declined possession of the evidence." Habeas Pet. at 12. Even assuming that the Government improperly suppressed the evidence – an incorrect assumption, as discussed above – counsel cannot possibly be faulted for failing to object to something he did not know

existed.  In any event, as explicated above, the suppression of this evidence had no prejudicial effect given that Lasher was not alleged to have committed her crimes alone and the video was of a different pharmacy from the ones principally discussed at trial.

### b. Forfeiture

Lasher next argues that her counsel should have challenged the $2.5 million forfeiture order because forfeiture should have been limited to property she actually acquired as the result of the crime under <u>Honeycutt v. United States</u>, 137 S. Ct. 1626 (2017). But counsel could not have formulated an argument based on Justice Sotomayor's June 2017 decision in <u>Honeycutt</u> before the jury returned its verdict on May 15, 2015.[3]

Moreover, counsel <u>did</u> object to the amount of forfeiture at sentencing on the basis that no proceeds or property "wound up in Ms. Lasher's hands or in her bank accounts or in her possession" other than her salary, some of which was "for legitimate work that she did having nothing to do with the Internet pharmacy." Sentencing Tr. 36:14-25, ECF No. 308.  This argument was rejected at the time as contrary to Second Circuit precedent, and Lasher points to no colorable forfeiture argument available to her that counsel failed to make at sentencing.

---

[3]     In any event, as discussed below, it is far from clear that <u>Honeycutt</u> has any application to Lasher's case.

Finally, even if Lasher were correct that Freeman's representation fell below an objectively reasonable standard and prejudiced the amount of forfeiture she was ordered to pay, she cannot possibly make inroads with the argument that, absent her counsel's deficient forfeiture argument at sentencing, the jury would have had a reasonable doubt at trial respecting her <u>guilt</u>. <u>See</u> <u>Strickland</u>, 466 U.S. at 695; <u>Kaminski v. United States</u>, 339 F.3d 84, 87 (2d Cir. 2003) (holding that a habeas petition pursuant to § 2255 "may not be used to bring collateral challenges addressed solely to noncustodial punishments").

### c. Additional Witnesses & Telephone Records

Lasher next asserts that counsel should have further investigated eleven individuals as potential witnesses: two pharmacists – Elfreda Ekwunife and James Kacer – and seven pharmacist technicians – Thomas Pisko, "Lindsay H.," Chris Haring, Erik Cajilema, Laura Getz, Lenine Lasher,[4] and Katie Scott. Habeas Pet. at 14-15.

Counsel's decision whether to call any witnesses, and if so which witnesses to call, "is a tactical decision of the sort engaged in by defense attorneys in almost every trial." <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987). "Courts

---

[4]    Lasher's inclusion of her daughter Lenine Lasher in this list of pharmacist technicians would appear to be in error.

applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005); see also United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam) ("The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second guess."). Therefore, "counsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation.'" Greiner, 417 F.3d at 323 (quoting United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000)).

Lasher's allegations relating to these potential witnesses are largely conclusory; her only specific assertion along these lines is that counsel should have called Katie Scott, a pharmacist technician at Hellertown Pharmacy and Palmer Pharmacy, as a witness to impeach the credibility of certain Government witnesses. Specifically, Lasher asserts that Scott made phone calls to two doctors who testified at trial that they never spoke to anyone from the pharmacy. See Habeas Pet. Ex. T, Scott 3513-01, Drug Enforcement Administration Report of Investigation, ECF No. 347-7 at 19. While a DEA Report of Investigation provided to the defense as 3500 material indicates that Scott recalled that she once contacted one of these doctors, that same report indicates that

18

Scott would have had significant inculpatory testimony such that it was reasonable for counsel not to call Scott as a witness. Id. For example, Scott stated to DEA agents that Lasher was one of the pharmacists who would approve the prescriptions received via the internet pharmacy operation and that the pharmacy was filling internet prescriptions without required doctor/patient consultations. Id. Scott also stated that "Lasher prohibited any of the employees from discussing the questionable procedures of the internet pharmacy operation at PALMER stating that the pharmacy was under video/audio surveillance and could be monitored from remote locations." Id. Counsel therefore reasonably could have believed that any incremental advantage in impeaching the credibility of certain Government witnesses would have been outweighed by Scott's testimony on other subjects. This determination falls squarely within the ambit of trial strategy, and does not rise to the level of constitutionally deficient representation. See Nersesian, 824 F.2d at 1321.

Lasher's allegations regarding the other eight potential witnesses are conclusory – she merely asserts that they were "available to testify in her defense," but did not. Habeas Pet. at 14. The Court cannot and will not guess as to what these witnesses might have said in the absence of specifics about the content of their testimony and how their testimony would have

19

affected the outcome.  Without more, such conclusory assertions cannot form the basis for relief.  See, e.g., United States v. Feyrer, 333 F.3d 110, 120 (2d Cir. 2003).

Lasher also questions her counsel's decision not to subpoena telephone company records.  Habeas Pet. at 14.  Lasher's undeveloped theory appears to be that these records would have proven that she called prescribing doctors to verify the legitimacy of prescriptions.  But Lasher does not provide a coherent basis as to how these records would have altered the outcome in the face of the overwhelming evidence against her, and the Court again will not speculate as to how they might have.  See Feyrer, 333 F.3d at 120.

### d. Expert Witness

Lasher next objects to her counsel's failure to call Dr. Richard Greene, who was the senior director of regulatory affairs and clinical pharmacist for a national pharmacy, as an expert witness.  See Letter, Apr. 24, 2015, ECF No. 221.  Lasher asserts that Dr. Greene would have "explain[ed] to the jury that allegations and charges against the Petitioner were not true." Habeas Pet. at 15.  Initially, we note that testimony about the truth of the allegations against Lasher would not have been permitted from an expert witness.  See, e.g., Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005) (internal citations and

20

alterations omitted) ("[E]xpert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's."). Nor would it have been permissible for Dr. Greene to have testified about the credibility or truthfulness of other witnesses. United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1988) (internal citation omitted) ("The credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.").

Moreover, counsel informed the Court at trial that he and Lasher had decided not to call Dr. Greene as an expert witness, an assertion to which Lasher did not object. Trial Tr. at 1335:19-25, ECF No. 244. Having agreed with this decision at trial, Lasher is not now entitled to object to her counsel's strategic decision. See Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) ("[I]n order to determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'") (quoting Strickland,

466 U.S. at 690). Nor can Lasher credibly assert that the proposed testimony of Dr. Greene on the indicia of validity and level of due diligence appropriately considered by a reasonable pharmacist could have changed the outcome of the trial in light of the overwhelming documentary and testimonial evidence that Lasher did not meet these standards. <u>See</u> Notice of Expert Testimony, May 1, 2015, Habeas Pet. Ex. V, ECF No. 347-7 at 25. At the very least, the decision not to call Dr. Greene as an expert witness was a reasonable tactical decision that cannot be considered a lapse in professional representation. <u>See, e.g.</u>, <u>Greiner</u>, 417 F.3d at 323.

### e. "Reliance of In-House Counsel"

Lasher next asserts that she met with the pharmacies' in-house counsel, the son of one of her co-defendants, at least once per month and relied on his advice regarding the legality of the internet pharmacy scheme. Lasher therefore argues that her counsel should have raised a "defense of reliance of in-house counsel." Habeas Pet. at 15. The record makes clear that the advice of counsel defense would not have helped Lasher.

"Reliance on advice, offered as a defense, 'presupposes the defendant's solicitation of advice in good faith.'" <u>United States v. Evangelista</u>, 122 F.3d 112, 117 (2d Cir. 1997) (quoting <u>United States v. Beech-Nut Nutrition Corp.</u>, 871 F.2d 1181, 1194 (2d Cir. 1989)). It requires a defendant not only to seek the advice of a

lawyer in good faith, but also that the defendant "in good faith and honestly follow[ed] such advice." Id. (quoting Beech-Nut, 871 F.2d at 1194-95). Here, Lasher filed a declaration before trial stating only that she had relied on counsel's advice "regarding the legality of dispensing prescriptions via the Internet." Decl., Mar. 27, 2015, Habeas Pet. Ex. W, ECF No. 347-7 at 30.

But even assuming that Lasher sought the advice of counsel in good faith on the limited question of whether it is legal to dispense prescriptions over the internet, she did not purport to have sought the advice of counsel on the conduct for which she was actually charged. It was not merely dispensing prescriptions over the internet that formed the basis of the misbranding, conspiracy, mail fraud, and wire fraud charges against her. Under such circumstances, an advice of counsel defense instruction would not have been warranted even if Freeman had sought one. See Evangelista, 122 F.3d at 117. Accordingly, counsel's failure to rely on this defense cannot form the basis for relief. See United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) ("[C]ounsel could not . . . have been ineffective for failing to make a motion that would have been futile.").

### f. Other Evidence and Testimony

Finally, Lasher asserts that her counsel should have objected to the admission of "other act" evidence under Federal Rule of

Evidence 404(b). This argument fails on numerous grounds. First, counsel _did_ object to the admissibility of "other act" evidence at trial. <u>See</u> Trial Tr. at 64:20-65:6, 177:9-15, ECF Nos. 232, 234. Second, Lasher already raised this argument on direct appeal, and the Second Circuit rejected it. <u>Lasher</u>, 661 F. App'x at 28-29. Lasher is therefore precluded from relitigating it by means of this petition. <u>See</u> <u>Pitcher</u>, 559 F.3d at 123. Third, as stated by the Second Circuit, this evidence was admissible as evidence of Lasher's intent, as well as absence of mistake, was admitted with an appropriate limiting instruction, and was not unfairly prejudicial. <u>Lasher</u>, 661 F. App'x at 28-29.

Lasher also argues that her counsel should have "challenged" the testimony of several Government witnesses. "[T]he conduct of . . . cross-examination is entrusted to the judgment of the lawyer," and courts "should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." <u>Luciano</u>, 158 F.3d at 660. Lasher's proffered lines of cross-examination range from vague to incoherent. For example, counsel was clearly justified in abstaining from cross-examining two agents about why "they did not put one tote in one box to assure the integrity of the tote was maintained," Habeas Pet. at 19, and cross-examination about the agents' tote-collecting

practices could not possibly have affected the outcome of the trial.

Finally, counsel's decision not to argue that certain photographs were planted by the Government on Lasher's phone strikes the Court as eminently reasonable trial strategy. Counsel reasonably could have believed that engaging in this type of conspiracy theorizing would have adversely affected his client's credibility before the jury. In any event, Lasher has not provided any substantive support for this assertion, and the Court may not grant habeas relief on the basis of "mere speculation." Wood v. Bartholomew, 516 U.S. 1, 6 (1995).

## IV. Honeycutt

In addition to seeking to vacate her sentence, Lasher contends that this Court should vacate or stay her forfeiture order based on the Supreme Court's decision in Honeycutt v. United States, 137 S. Ct. 1626 (2017). See Habeas Pet. at 13-14; Pet., Aug. 28, 2017, ECF No. 354; Mot., Aug. 3, 2018, ECF No. 402. Honeycutt stands for the proposition that "[f]orfeiture pursuant to [21 U.S.C.] § 853 is limited to property the defendant himself actually acquired as the result of the crime," 137 S. Ct. at 1635, and Lasher asserts that "a plain reading" of Honeycutt makes clear that her forfeiture order pursuant to 21 U.S.C. § 981 is invalid. Not so.

25

As a threshold issue, forfeiture orders may not be challenged by means of a § 2255 habeas petition, which "may not be used to bring collateral challenges addressed solely to noncustodial punishments," including orders of forfeiture and restitution because a "monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement," even if raised in conjunction with a challenge to a sentence of imprisonment. Kaminski, 339 F.3d at 87-88 (2d Cir. 2003); see United States v. Boyd, 407 F. App'x 559, 560 (2d Cir. 2011); Pinhasov v. United States, No. 16 Civ. 7349 (KBF), 2018 WL 550611, at *3 (S.D.N.Y. Jan. 22, 2018); Fazio v. United States, No. 16 Civ. 7792 (KBF), 2018 WL 357310, at *3 (S.D.N.Y. Jan. 10, 2018); Nigro v. United States, No. 15 Civ. 3444 (PKC), 2016 WL 3211968, at *9 (S.D.N.Y. June 9, 2016).

More specifically, courts have universally rejected the argument that Honeycutt can form the basis to disturb a final forfeiture order on a § 2255 petition. United States v. Gooden, No. 15 Cr. 5 (DCR), 2018 WL 276131, at *3 (E.D. Ky. Jan. 3, 2018) (holding that Honeycutt argument is barred because "a § 2255 Motion may not be used to raise a freestanding challenge to the noncustodial components of a defendant's sentence"); United States v. Ball, No. 14 Cr. 20117 (DML), 2017 WL 6059298, at *1-3 (E.D. Mich. Dec. 7, 2017) (concluding "that section 2255 forecloses

defendant's <u>Honeycutt</u> and other forfeiture-related claims");
<u>Ferguson v. United States</u>, No. 16 Cr. 10 (JLG), 2017 WL 5991743,
at *1 (S.D. Ohio Dec. 4, 2017) (quoting <u>United States v.</u>
<u>Blankenship</u>, No. 15 Cr. 11 (DCR), 2017 WL 3260604, at *3 (E.D. Ky.
July 31, 2017)); <u>United States v. Alquza</u>, No. 11 Cr. 373 (FDW),
2017 WL 4451146, at *3 (W.D.N.C. Sept. 21, 2017), <u>aff'd</u>, 722 F.
App'x 348 (4th Cir. 2018) ("Defendant may not invoke <u>Honeycutt</u> on
collateral review . . . under 28 U.S.C. § 2255."); <u>Bangiyev v.</u>
<u>United States</u>, No. 14 Cr. 206 (LOG), 2017 WL 3599640, at *4 (E.D.
Va. Aug. 18, 2017) ("To the extent that Petitioner seeks to reduce
the amount he owes in forfeiture through this Motion, the
Government correctly points out that the relief cannot be provided
through § 2255."); <u>see also</u> <u>United States v. Ortiz</u>, No. 11 Cr. 251
(JED), 2018 WL 3304522, at *7-8 (E.D. Pa. July 5, 2018) (holding
that <u>Honeycutt</u> is inapplicable on a § 2255 petition because it is
a "new rule" under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), is
procedural rather than substantive, and is not a "watershed rule").

Finally, even if the issue were properly before us, it is far
from clear that <u>Honeycutt</u> has any application to Lasher's
forfeiture order. <u>Honeycutt</u> narrowly addresses the issue of
whether joint and several liability is available for forfeiture
for co-conspirators in certain drug crimes under 21 U.S.C. §
853(a)(1). 137 S. Ct. 1626. But Lasher's forfeiture order has a

completely different statutory basis: 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. Second Circuit precedent mandates joint and several liability under Section 981, see, e.g., United States v. Contorinis, 692 F.3d 136, 147 (2d Cir. 2012), and this precedent binds the Court unless and until the Supreme Court or Second Circuit says otherwise. Indeed, another court in this district recently issued a thorough and well-reasoned opinion holding that Honeycutt does not apply to a forfeiture order under § 981(a)(1)(C). United States v. McIntosh, No. 11 Cr. 500 (SHS), 2017 WL 3396429, at *3-6 (S.D.N.Y. Aug. 8, 2017), appeal docketed, No. 17-2623 (2d Cir. Aug. 24, 2017); accord. Bangiyev, 2017 WL 3599640, at *4 ("[U]nlike 21 U.S.C. § 853, calculating fraud loss does incorporate the bedrock principles of conspiracy liability.").[5]

Accordingly, Lasher is not entitled to any relief based on the Supreme Court's decision in Honeycutt.

## V. Evidentiary Hearing

Lasher requests that the Court hold an evidentiary hearing. "[I]f it plainly appears from the motion, any attached exhibits,

---

[5] The Second Circuit has not yet determined whether Honeycutt applies to forfeiture ordered pursuant to § 981(a)(1)(C). See United States v. Fiumano, 721 F. App'x 45, 51 n.3 (2d Cir. 2018) (declining to reach the question "whether Honeycutt's ruling, made with respect to a forfeiture order under 21 U.S.C. § 853(a)(1), applies equally in all respects to forfeiture orders under other statutes, including 18 U.S.C. § 981(a)(1)(C), applicable here").

and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion" without holding an evidentiary hearing. <u>Puglisi v. United States</u>, 586 F.3d 209, 213 (2d Cir. 2009); <u>see also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). The Court denies this request because the current record conclusively establishes that Lasher is not entitled to the relief sought in her § 2255 petition.[6]

---

[6]    Lasher's request for a <u>Fatico</u> hearing, <u>see</u> Mot., Aug. 15, 2018, ECF No. 404, is likewise denied. A <u>Fatico</u> hearing is an evidentiary proceeding to resolve disputed facts <u>prior</u> to sentencing, not after a criminal defendant has been sentenced. <u>See</u> <u>United States v. Cuevas</u>, 496 F.3d 256, 260 (2d Cir. 2007); <u>see generally</u> <u>United States v. Fatico</u>, 579 F.2d 707 (2d Cir. 1978).

## CONCLUSION

For the foregoing reasons, Lasher's petition is denied without a hearing. Because Lasher has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this Memorandum and Order would not be taken in good faith. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 347, 354, 356, 358, 368, 369, 371, 372, 377, 378, 380, 382, 383, 384, 385, 386, 387, 389, 390, 402, and 404 in No. 12 Cr. 868 (NRB), and ECF No. 8 in No. 17 Civ. 5925 (NRB).

**SO ORDERED.**

Dated:    New York, New York
          August 20, 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE