IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Lena Lasher, Plaintiff

Civil Action No. 17 CV 5925 (NRB)

v.

United States of America

Rebuttal to Government's letter of September 26, 2018

Dear Judge Buchwald:

PERJURIES are NEVER MOOT; the trial judge (you), the Government and its witnesses committed

PERJURIES at the Plaintiff's trial, as well as in opinions the District Court published on the internet to cover up

her perjuries.

According to Black's Law Dictionary, perjury is interpreted as:

*"In criminal law*, the willful assertion as to a matter of fact, opinion, belief, or knowledge, made by a witness in a judicial proceeding as part of his evidence, either upon oath or in any form allowed by law to be -substituted for an oath, whether such evidence is given in open court, or in an affidavit, or otherwise, such assertion being material to the issue or point of inquiry and known to such witness to be false. A false statement knowingly made in a proceeding in a court of competent jurisdiction or concerning a matter wherein an affiant is required by law to be sworn as to some matter material to the issue or point in question. *Henry v. Been, 310 N.C. 75, 310 S.E.2d 326, 335.*
A person is guilty of perjury if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true. *Model Penal Code, No. 241.1.*
See also 18 U.S.C.A. No.No. 1621, 1623.
Subornation of perjury is procuring another to commit perjury.
See 18 U.S.C.A. No. 1622.
For unsworn declarations under penalty of perjury, see 28 U.S.C.A. No. 1746."

Legislation lays down laws or rules. Administration carries those laws into effect. The judicial function

is "to carry out the purposes of the statute, not to AMEND it." Miller v. US 79 LEd 977 294 US 435 (1935)."It

is not within the power of the Court to "amend the governing pharmacy laws" on the ground that the

administrative power conferred on the" State Board of Pharmacy for all pharmacists to abide by. Lambert Run

Coal v. Baltimore & Ohio R. Co. 66 LEd 671, 258 US 377 (1922). Judge Buchwald's rulings are indefensible

under the Controlled Substances Act; there is not even a colorable argument supporting Judge Buchwald's

unlawful exercise of jurisdiction. "The scope of the indictment goes to the existence of the trial court's subject-

matter jurisdiction". Stirone, 361 U.S. at 213; Ex parte Bain, 121 U.S. At 12-13.

Because Judge Buchwald USURPED administrative and legislative powers in ruling on the Plaintiff's motions, thus warrant her decisions on all the Plaintiff's motions as MOOT.

The Plaintiff will prove that she was framed by the trial judge, prosecution and its witnesses. There is no dispute that Butalbital, a drug the Plaintiff was indicted with, NEVER existed in the pharmacies and that Tramadol, the other drug named in the indictment, was not a controlled substance at the time of dispensing.

While the Plaintiff was incarcerated, Richenthal illegally threatened to imprison the Plaintiff another 10 years if she were to sue witnesses who FALSELY testified against her; this threat is clearly EXTORTION. The reason why the prosecution would stoop to extortion is to protect perjured testimony that he knew used to convict me, otherwise there is no need for extortion The prosecution would be happy if I waste my time going after witnesses who did nothing wrong.

Rather than answer the Plaintiff's complaint concerning the Defendants' deprivation of the Plaintiff's Rights under the Due Process and the Equal Protection Clauses via FRAUD (perjuries - lying to the jury, known use of perjury) EXTORTION,  and the USURPATION of  ADMINISTRATIVE and legislative powers. The Defendants and the TRIAL JUDGE NAOMI REICE BUCHWALD are trying to distract the PUBLIC by using 2 logical fallacies.  Their speculation about other pending litigations initiated by the Plaintiff is a Red Herring fallacy meant to discredit the Plaintiff and distract from the matter at hand.  The matter at hand is her civil action against the trial Judge (injunctive relief).  The Plaintiff: was wrongfully convicted, can show conclusively her actual and factual innocence, and litigation is the only means to correct that injustice and the injustices that cascaded forth from it.  The Defendants are in essence saying 'you've been hit and you must stay down and keep quiet.' However, The Plaintiff will fight until she overturn her wrongful conviction. Her ongoing appeals and civil actions are filed with due cause, based on, among other things, the constitutional violation of withholding exculpatory evidence that was essential in showing the Petitioner was not present and did not initiate or cause the criminal offense wrongfully asserted in the criminal case established by the government and it's conviction. The documentation per the petition is an essential element to show cause as to the perjured testimony of the government and the government's witnesses. "Prosecutors who knowingly present perjured witness testimony or fail to correct it violate a defendant's right to a fair trail, the U.S. Court of Appeals for the Third Circuit ruled (Haskell v. Superintendent Greene SCI, 2017 BL 266640, 3d Cir., No. 15-3427, 8/1/17). "A root is how can a

defendant possibly enjoy his right to a fair trial when the" government "is willing to present (or fails to correct)

lies told by its own witness and then vouches for and relies on that witness's supposed honesty" in its closing

argument? Circuit Judge Thomas L. Ambro asked in writing for the court that tossed a murder conviction Aug. 1

(2017). He answered that question by quoting the U.S. Supreme Court in Napue v. Illinois. "A lie is a lie, no

matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and

duty to correct what he knows to be false and elicit the truth," he said. (T.1736, 1938-1941, 1951, 1953, 1861).

   The Government claimed Lasher's motions "have no support in the law, logic, or the record.

However, it was the Government and the trial judge who ILLEGALLY indicted, convicted, and imprisoned the

Plaintiff with NO support in the law, logic, or the record. Therefore, ALL of her motions should be GRANTED.

   Instead of responding to the Plaintiff's complaint but seeking its dismissal on statute of limitation

grounds, which the Government is clearly incorrect as detailed in Argument 3 below.  In the statute of limitations

claim, the Prosecutors are altering the Plaintiff's argument into a straw man and hoping the Court allows them to

knock the straw man back down instead of confronting the Plaintiff's just claims against them.  While the

Government stated that the Plaintiff is "misreading the law" they do not state where or how she misread the law

because they can't. Their case is based on an intentional misrepresentation of the law and to state that the

Plaintiff is misreading the law without providing any thing to back it up or to clarify it shows that their argument

has no substance. It is not even an argument. It is an unsupported and unsubstantiated statement. If Fioricet is a

controlled substance, all the Government can do and all they should do is point to the Federal Register to show

where and when the Attorney General made it a controlled substance.

   Let start from the beginning:

1.  From the pretrial phase right through to sentencing, the Government know Judge Buchwald demonstrated

bias against the Plaintiff in the way Judge Buchwald improperly dealt with allegations concerning the Plaintiff's

dispensing of the drugs Tramadol and the wrongly named "butalbital" (discussed in 2. below).  Count 1 of the

original Indictment, charged the Petitioner with violating the Controlled Substances Act, for shipping and

directing others to ship Tramadol on August 27th, 2012.  Tramadol was not a controlled substance.  Judge

Buchwald kept the Plaintiff under indictment, refusing to dismiss the charge or explore any potential remedy to

the problem of an allegation that was not a crime for two and half years, Twenty-one months after the Plaintiff's

arrest and after multiple motions and hearings to dismiss the charges that alleged acts that were not crimes,

Tramadol became a Federal Controlled Substance, proving to even the densest of the dense, that the alleged acts

had no business in her court room. It took the Prosecutors to withdraw the charges and bring a new indictment

involving misbranding under the Food Drug and Cosmetics Act. After an extremely biased trial, the Plaintiff

was found guilty, but not of violations of the Controlled Substances Act. That did not deter Judge Buchwald in

exercising her bias against the Plaintiff. She sentenced the Plaintiff as if her acts violated the Controlled

Substances Act, and even stated in her denial of bail pending appeal that all the drugs the Plaintiff dispensed via

the fulfillment pharmacy were controlled substances . Judge Buchwald threw the law away and usurped

Administrative power in treating Tramadol as a controlled substance, punishing the Plaintiff for proclaiming her

innocence to the original indictment after Judge Buchwald accept guilty pleas to acts that were not crimes.

Judge Buchwald is holding the Plaintiff to a standard that just didn't exist when the alleged crimes took

place, and that standard can only be seen as a biased standard. It wasn't a controlled substance until 21 months

after the arrest, and when it became one, it became a Schedule IV drug. A schedule IV drug "has a low potential

for abuse relative to the drugs or other substances in schedule III" where "abuse of the drug ... may lead to

limited physical dependence or psychological dependence relative to the drugs or other substances in schedule

III." The only drugs considered to have high potentials for abuse are Schedule I and II drugs. The limited

dependencies that abuse of Schedule IV drugs may lead to, are a sharp contrast to the "High", "Moderate", and

"low" dependencies described for drugs on more restricted schedulings. They also show that Judge Buchwald

did not rely on the law, but only relied on her bias against the Plaintiff, when she called the drugs highly

addictive. These quotes in the paragraph come from section 812 of the Controlled Substances Act, and they

show the judge was more interested in hyperbole than the actual law or public safety. It is important to note that

these dependencies come about if a patient is abusing the drugs. A pattern for abuse on the parts of patients was

not established for Tramadol, neither among the patients to whom the Plaintiff dispensed nor among the broader

population, so Tramadol was not and should not have been a controlled substance at the times covered by the

indictment. There was no reason, nor evidence suggesting, that patients the Plaintiff dispensed to were abusing

the non-controlled substance. The Judge is taking it upon herself to hold the Plaintiff to a legal standard not

passed by the Legislature and to a professional standard not set by the Administration via their Controlled Substances list. It is clearly and obviously as uspuration of powers the Judge does not legally have.

At trial, no acts of misbranding of Tramadol were alleged. Deceptively ambiguous allegations about re-dispensing medicines that were returned were disproved by MURP reports, and there was no direct allegation of misbranding Tramadin in that way. The Plaintiff continues to maintain her actual and factual innocence, can refute every allegation made against her at trial, and intends to over turn her wrongful conviction. But even without that, it is clear that Judge Buchwald was intent on putting the Plaintiff on trial and in jail for an act that was not illegal and not a violation of the Controlled Substances Act, for having the nerve to refuse a plea deal the other alleged co-conspirators accepted.

It is important to note that only one pharmacist was charged in this alleged narcotics conspiracy: the Plaintiff. It is a fact that the Plaintiff was working in a New Jersey Pharmacy, not one of the pharmacies where the alleged crimes took place. The allegations in the charge are ambiguous for a number of reasons, but the relevant one here is that they allege she did the misbranding or she directed others to do it. Which is it? The charge does not specifically name an act done by the Plaintiff. It does not name a prescription. It does not name a person who received "misbranded" drugs or prescriptions. No one claims to be harmed by the petitioner. To cover up for the fact that nothing is actually alleged, other than naming one non-controlled substance and naming one intentionally misnamed non-controlled substance, the charges allege the Plaintiff directed others to do these acts in Pennsylvania while she was in New Jersey. The charges against the Plaintiff attempt to make her responsible for the actions of other pharmacists, in dispensing the drugs, that were not controlled substances, into "interstate commerce". This alleged introduction of allegedly controlled substances into interstate commerce was the entire act the alleged conspiracy hinged on. If the Plaintiff was not guilty, if her charges properly dropped upon realizing no controlled substances were involved, all the guilty pleas are clearly improperly obtained because there would be no jurisdiction for the Judge. The ridiculousness of these charges remain obvious.

2. In the same way the original charges alleged violations of the controlled substances act with regard to dispensing Tramadol, it made the exact same allegations about dispensing "Butalbital". "Butalbital" is a controlled substance. The problem with the allegation is it is false. No pharmacy the Plaintiff worked at ever

stocked "Butalbital", ever, anywhere.  It is only used in manufacturing and compounding, not in retail.  The drug dispensed was Fioricet is not a controlled substance.  It has no potential for abuse, the Attorney General has not made it a controlled substance, and it is not on the controlled substances list.  In order for a DRUG to be made a controlled substance, a very specific and on-the-record process must be initiated by the Attorney General.

If a drug is suspected of having a potential for abuse, the Attorney General must make findings to confirm if it does or doesn't.  If the Attorney General, after the process is completed, finds the drug should be a controlled substance, the Attorney General will determine what schedule it belongs in, and publish the date it will become a controlled substance so the health care community has fair warning.  This fair warning allows doctors and pharmacists to make adjustments needed, especially with regard to alerting their patients and to consider alternatives, if such are desired, to avoid any pitfalls that may be involved for the patients with regard to the newly-established and discovered potential for abuse.  This is all spelled out very clearly in sections 811 and 812 of the Controlled Substances Act, that requires that this process occurs on the record and must be in accordance with Title V Section 5, allowing for public notice and fair warning.  Also, the definitions under law for the terms "Drug" and "Fixed-Combination Drug" both show that a drug is not judged by its components but as its own entity, because a drug does not have the same properties that its components have, especially with regard to potential for abuse.

The Attorney General has not made Fioricet a controlled substance, no citation of such an act was ever provided by the judge nor the prosecutors.  Judge Buchwald and the prosecutors have simply made it one themselves for the purposes of this prosecution by usurping both legislative and administrative powers.  Tramadol went through this process, twice: once by Judge Buchwald usurping administrative power and lying about it right up until the bail pending appeal, and once legitimately but very long after the Plaintiff was arrested for violating the controlled substances act for dispensing it via the fulfillment pharmacy.  These are simple facts, and Judge Buchwald quite simply proves herself to be incompetent for not reading or comprehending the Controlled Substances Act, and this motivates her bias against the Plaintiff, and is why she made sure the Plaintiff was going to be found guilty.

It is only Buchwald's lies, lies requiring a usurpation of Legislative Power, that make it appear that anything was wrong with what the Plaintiff did with regard to Fioricet both when the original indictment sat over

the Plaintiff's head for two and a half years, and even after the superseding indictment replaced it.  After pre-trial

motions and responses were exchanged, it became clear to all parties including the Judge that: 1) Tramadol was

not a controlled substance (which she ignored at the bail pending appeal, because she was exercising her bias not

any judicial power), and that the other drug dispensed was not Butalbital but Fioricet.  **The Judge should have**

**dropped the charges.  There were only two drugs named, and one falsely.  Neither was a controlled**

**substance.**  No other drug, no other acts, no other anything at all, was involved in this alleged narcotics

conspiracy.  **Quite obviously a lot of lies were told to a Grand Jury to create these indictments, but NO**

**ONE IN A POSITION OF POWER HAS EVER EVEN BATTED AN EYE AT THAT**.  THAT IS AS

SHOCKING AS IT IS SICKENING.

Instead of dropping the charges, Judge Buchwald: 1) usurped Legislative power, changing or eliminating

two definitions that exist in federal law that show clearly why Fioricet can never be treated under the law as if it

were one of its components; and 2) usurped Administrative power by making Fioricet a controlled substance

when it is not.  It is important to note that Judge Buchwald did not just, wrongly, extra-judicially, despotically,

say that Fioricet is same thing as Butalbital.  She also acknowledged both pre-trial and in her denial of bail

pending appeal that the drug dispensed was Fioricet.  She states, wrongly, extra-judicially, despotically, that

because one of its components is a controlled substance, it is a controlled substance.  She did not use the right

name for the drug except on those occasions because she knows she is trying to pull a fast one over on the jury

and anyone reading the trial or sentencing transcripts.  If she were so very confident that Fioricet is a controlled

substance, she would have called it that at trial and at sentencing, the prosecutors would have called it that and

presented the drugs and the prescriptions as evidence, but they didn't submit any of the prescriptions received or

the labels or anything as evidence.

Not just with regard to Fioricet, but at every turn: the prosecutors made their case without any physical

evidence.  That is because the physical evidence at every turn disproves their case.  Physical evidence that

contradicted witness testimony over every allegation made at trial, physical evidence that is superior according

to the rule of best evidence, was suppressed or withheld by Judge Buchwald.  But, what they did with the MURP

reports described below, could not have happened if the actual name of the drug were allowed in Judge

Buchwald's court room.  Almost six years later, she, the prosecutors, and the other judges who had a chance to

address her misconduct, are still ignoring the facts and protecting her usurpation of legislative and administrative power.  The physical evidence withheld by Judge Buchwald show her bias even more clearly than her deceptive name change.

The MURP reports presented as evidence show the Plaintiff and no one in the pharmacies were guilty of the allegation that returned medicines were re-dispensed instead of destroyed.  But, in her court room the reports may as well have been written in Sanskrit, because of Judge Buchwald's bias and the fact that she was really just trying to pull a fast one on the Jury and the Plaintiff, and the entire health care community.  Because Judge Buchwald refused to use an actual name for the drug at trial, and because the DEA agents who testified that they received the drug were free to commit perjury in saying they received "Butalbital", when they were prescribed Fioricet and received Fioricet and every label on anything generated for those prescriptions would have an actually appropriate name for the drug on it, the MURP reports were rendered unreadable by the Jury-- by design.  The MURP reports clearly show that the amount of FIORICET returned to the pharmacy matched the amount destroyed, the deceptively ambiguous allegation of re dispensing returned medicines was refuted with regard to this drug and every drug.  But the Prosecutors challenged that evidence in front of the Jury, knowing that the Jury had not been told that Fioricet was the drug dispensed.  **AUSA Richenthal pointed out that "Butalbital" was not on the MURP report, while knowing that the drug dispensed was Fioricet.  This despicable act of deceit against the Jury, and the Plaintiff, and the entire health care community can only be made by someone with absolutely no reservations about lying and no reservations about imprisoning an innocent person.  For Judge Buchwald to give it a free pass, for the Government to give it a free pass, for Judge Katzmann and Judge McMahon to give it a free pass makes them all as vile as AUSA RICHENTHAL for this act.**

The Jury were made into the Judge's and the Prosecutor's patsies by this deceit and can not be held responsible for this conviction and neither should their conviction be considered their will.  Their will was taken from them by the Judge's lies.  This deceit was made possible by Judge Buchwald's renaming of the drug to hide her actions from everyone who knows better.  Judge Buchwald's bias goes beyond the kind associated with mean words or assuming the worst in someone, because Judge Buchwald's bias was a long-term scheme meant to imprison an innocent person, first by lying about a drugs name, lying about what the Controlled Substance

regulates (Drugs, not components of drugs), lying about what charges are claiming Tramadol was included as "background information", and making up fake categories that are not found in the law, like: highly addictive pain meds, which was her substitute for "potential for abuse" found in the Controlled Substances Act.

There was no reasonable excuse for a Judge to not dismiss a charge alleging violations of the Controlled Substances Act in 2012 for anything involving the drug Tramadol.  So the Judge gave an unreasonable excuse. During the June 2014 oral arguments for the Motion to Dismiss the original indictment, Judge Buchwald avoided dealing with the fact that Tramadol was not a controlled substance at the time the alleged crimes occurred with the following completely ridiculous and untenable contention about why the charges were written as they were: "Because the appearance of Ultram (a brand name for Tramadol) in Count One appears to be merely a function of the placement of background information, we need not reach a decision as to defendant's motion to strike at this time. … (W)e will revisit the issue if and when this case progresses to a point at which the concerns raised by Defendant regarding prejudice and jury confusion are more immediate." (Tr. At 33)  Her reasoning here is a lie, because in her denial of the bail pending, she states that all the drugs the Plaintiff dispensed were controlled substances.  Judge Buchwald is not acting as a judge, but using her power as a vehicle for her bias.  Making Tramadol a controlled substance and lying about it, not dismissing the charge but pretending it is background information, is a usurpation of Administrative power and dishonest.  It is a violation of Canon 2 that guides judicial conduct.

3.      It is also a violation of Canon 3: "The duties of judicial office take precedence over all other activities." She was at a hearing to dismiss defective charges, and her duty was to deal with them in an unprejudiced way. There was no legal justification to put off the dismissal of the charges at that moment.  It was her responsibility and she ignored it in favor of some future "point at which the concerns raised by Defendant regarding prejudice and jury confusion are more immediate."  What is that point?  Everyone involved and anyone reading this knows that simply means after the prosecutors get her licenses revoked, and they make threats over worse but also false charges as they did often, and the trial date rolls around and her lawyers essentially beg her to take a plea deal and even her lawyer's lawyer friends call begging her to take a plea deal, and with as much fear and intimidation they can possibly muster, the "point" the Judge refers to is the accepting of plea deal.  She is shirking her judicial responsibility in violation of Canon 3, in favor of being the Prosecutor's anvil.

4.      Judge Buchwald's non-decision over Tramadol was clearly a disingenuous way to hide her true intentions. At trial, and at sentencing, and in denying bail pending appeal, the Plaintiff was held responsible to the standard contained in the Controlled Substances Act for dispensing the fulfillment pharmacy prescriptions, even though none of the prescriptions dispensed were controlled substances. The Controlled Substances Act, violations of which were removed from the superseding indictment, did not apply to any of the drugs dispensed via the fulfillment pharmacy. The jury was falsely told that Tramadol and the drugs dispensed via the fulfillment pharmacy required a pharmacist to confirm a face-to-face relationship between a doctor and patient, where only a bona fide relationship is required and the only confirmation required is the doctor's signature on the prescription. The Judge also created her own legal standard at trial and at sentencing she declared that "all the drugs" the Petitioner dispensed "were highly addictive pain meds". This is a false for a couple of reasons. None were. The Judge heard about three drugs dispensed via the fulfillment pharmacy: Carisoprodol, Tramadol, and Fioricet which was called "Butalbital" by witnesses who must be acknowledged as having perjured themselves because that is not the name of the drug they received nor was it the drug they were prescribed, in her court room. In fact, at trial, due to the fact the pharmacies never carried butalbital, the executive officials (AUSA Richenthal and Greenberg, DEA Agents Popowich, Germano, and Murphy) and the trial Judge, deceived the jury by calling Fioricet, the name of the drug that was dispensed, by the name of one of its components, butalbital. On its own Butalbital is a drug that is a controlled substance which required a valid prescription. But Butalbital is not Fioricet. Fioricet is a fixed-combination drug as described below in item # 9. Fioricet is a NON controlled substance under federal law, has no potential for abuse, and does not require a valid prescription. The combination is formulated such that the patient can not abuse the drug: doing so would hospitalize them for liver damage due to the addition of a demonstrably non-controlled substance that is available over the counter with out any prescription: Acetaminophen. This is no different than if a patient tried to abuse Tylenol, because the active ingredient in Tylenol is Acetaminophen. Because of this lack of a potential for abuse, Fioricet does not meet the criteria for a controlled substance under federal law as set forth under the Controlled Substances Act Subchapters 881 (a), 811 (b), 811 (c), 812 (b) (3) (A), or 812 (b) (3) (C). In particular, it does not meet the criteria that specifies that the findings that cause a drug to be a controlled substance under federal law must "be

made on the record after opportunity for a hearing pursuant to the rule making procedures prescribed by subchapter II of Chapter 5 of Title 5."

This bait-and-switch of a drug's name for the name of one of its components causes the indictment to be a defective indictment. The changing of the drugs name was intentional and indicative of judicial bias. The administration officials, both prosecutors and DEA agents, committed perjury and fraud on the Court and usurped legislative authority by trying to make Fioricet a controlled substance by calling it Butalbital, and the District Court invented its own laws to create a jurisdiction for itself over Fioricet by blindly accepting this renaming of the drug. If Fioricet was called by its proper name, it would be obvious to the casual observer that the District Court lacked of subject matter jurisdiction over this case. The Plaintiff's lawyers completely ignored this.

DEA agents Popowich, Germano, and Murphy all lied when they stated: 1) that they ordered and received butalbital, and 2) that they had invoices for butalbital. However no such invoices nor the medicines they ordered were presented to the jury as physical evidence to back up their claims, because if they had presented it everyone would plainly see they received Fioricet which is not a controlled substance. There was no physical evidence of any prescription, receipts, nor invoices of "butalbital" nor controlled substance marking on any of it, because there were none as there are none for Fioricet. A competent attorney would address this matter.

Carisoprodol is not a "pain med". It is for spasms and it became a schedule IV controlled substance on January 11, 2012, and the petitioner made sure the fulfillment pharmacy stopped dispensing it on December 23, 2011.

Tramadol became a controlled substance on August 18th, 2014, 21 months after the original indictment; when it did, it became a Schedule IV Controlled Substance. It is not a pain med, but a "pain reliever" and the distinction is a real one as anyone suffering from severe pain and needs a pain med can attest to. Acetaminophen is a pain reliever. "Pain med" is a category of medicine, and those are Schedule II drugs, none of which were dispensed through the fulfillment pharmacy, as no controlled substances on any schedule were dispensed through the fulfillment pharmacy. A pain reliever is not the same as a pain med, and the typical potentials for abuse differ similarly for the two. Long after the Plaintiff's arrest, and long after the defects in the indictment where

the alleged and ill-defined acts were not crimes at all should have lead to the charges being dismissed, it was found Tramadol "has a low potential for abuse relative to the drugs or other substances in schedule III" where "abuse of the drug ... may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule III." These quotes concerning schedule IV come from section 812 of the Controlled Substances Act, and they show the judge was more interested in hyperbole than the actual law or public safety. To call Tramadol highly addictive is false hyperbole meant to prejudice anyone hearing or reading the Judge's words against the Plaintiff, and in 2012 no potential for abuse was recognized for the drug and it was not a controlled substance. Even after it became a controlled substance it is still wrong to call it "highly addictive" or a "pain med". The Judge's phrase is not found under the law and purely meant to be prejudicial and thus clearly a violation of Canon 2's demand for impartiality and Canon 3's prohibition against partisanship. The actual drug Butalbital can not be considered "highly addictive" either, not only because the phrase has no meaning under the law nor in any qualified discussion of addiction where the proper term "potential for abuse" is used, but because as a Schedule III controlled substance, its potential for abuse is only classified as falling below Schedule II drugs (which might colloquially be called highly addictive). But, that point is moot because Butalbital is not a drug ever dispensed by the fulfillment pharmacy. The Judge is lying when she calls the drug Butalbital. Her renaming of the drug for her own purposes can only be considered an intentional deception to conceal the fact that she did rename Fioricet by the name of one of its components and then treated Fioricet as if it were a controlled substance. The Judge violates Canon 2 by not respecting the law's definition of Drug that prevents renaming of drugs, and Canon 3 prohibition against partisanship by doing nothing more than parroting the Prosecutors misrepresentation of the law and its requirement for her to be competent in the law.

So, the Judge heard about three drugs dispensed via the fulfillment pharmacies. One they stopped dispensing before it became a controlled substance because it happened while they were in business, one became a controlled long after the plaintiff was arrested for dispensing it as if that were a violation of the controlled substance, and one never. When the government sent out their fair notice warning, the fulfillment pharmacies contacted their patients who were being treated by doctors with Carisoprodol to inform them that they would no longer dispense the drug for them. The government's fair warning, required under the parts of the Controlled Substances Act the Judge and Prosecutors ignored and under Title V Section 5 specifically refereed to in the

Controlled Substances Act, allowed the pharmacy to give their patients enough fair warning, and they stopped

dispensing the drug two weeks before the date it became a controlled substance.  These are the actions of a

responsible pharmacist and a business that is conducting itself legally.  Judge Buchwald's lie that all the drugs

dispensed by the fulfillment pharmacy being "highly addictive pain meds" is clearly false and prejudicial.

Regardless of what ever she thinks her made-up category means, it is not in nor of the law.  She is using her time

and power as a judge to hold the Plaintiff to a standard not found in the law.  Also at sentencing Judge Buchwald

lied by stating the Plaintiff dispensed Butalbital.  She committed a fraud on her own court in service to her bias.

The acts described here are not a judicial acts and are violations of Canons 2 and 3 that govern judicial conduct.

5.      On November 30, 2015 Judge Buchwald's bias remained on display but she sheds the faux-legal phrase

she made up and ignores the fact that the Plaintiff was not convicted of any Controlled Substance Act violations,

in her denial of the Plaintiff's Motion for bail pending appeal, by lying in stating that "all the drugs the Petitioner

dispensed were controlled substances". The statement itself is a lie, a fraud on the court and a slandering of the

Plaintiff, and it shows her usurpation of Administrative power, because she is the only one making the these

drugs controlled substances, not the Attorney General.  None of the drugs the Petitioner dispensed via the

"fulfillment pharmacy" were controlled substances and there was nothing illegal or unethical about dispensing

them. Thus in her denial of bail pending appeal, Judge Buchwald's bias is on full display as well as her

usurpation of Administrative power. These are additional violations of Canon 2 and 3 that govern judicial

conduct.

6.      Judge Buchwald clearly is treating Tramadol as a controlled substance even though the pharmacies in

question were shut down because this wrongful prosecution 21 months before it became a controlled substance,

and her ill-advised phrase "highly addictive pain meds" and her ridiculous statements about "background

information" were only meant to conceal the fact that she was going to find the Plaintiff guilty of the original

indictment even after it was withdrawn.  This is not a Judicial act; it is a usurping of Administrative Power.

Judges do not decide if a drug is a controlled substance or not.  That task is the Attorney General's, and there is

no side-stepping the fact that Judge Buchwald usurped that power in these criminal proceedings. These are

violations of Canon 2 and 3 that govern judicial conduct.

8.       As stated above, the other drug named in the indictment is "Butalbital"; but this was a deception

committed by the prosecutors against the Grand Jury, the district court and the Plaintiff because the drug in

question was Fioricet, not Butalbital.  There was never any Butalbital dispensed by any of the pharmacies in

question.  During the pretrial phase this fact was well established and all sides acknowledged that the drug in

question was indeed Fioricet (08212014 Buchwald Memorandum and Order).  Here, the following statement by

Judge Buchwald, made orally during the June 2014 motion to dismiss and repeated in writing in her August 21,

2014 Memorandum and Order, shows how wrong she has been over the course of these proceedings, shows how

wrong on the law she has been in the whole made-up "narcotics conspiracy", how wrong she was throughout the

trial and pre-trial phases, at sentencing, in her Bail Pending Appeal denial, and ever since, and shows clearly and

undeniably that she usurped both legislative and administrative power through all of it: "Because Fioricet

contains Butalbital, a derivative of barbituric acid, there is no dispute that Fioricet falls within the category of

drugs controlled by 21 U.S.C. § 812. See Def. Mem. at 4-5; Def. Reply Mem. At 2." 08212014 Buchwald

Memorandum and Order.

         Fioricet containing Butalbital has NOTHING to do with how it is treated under the law, it really is as

simple as that because the law is exceptionally clear. The law treats drugs as drugs, not as their components,

because the properties of each drug are not the same as that of its components, including their potentials for

abuse.  This is recognized in the real world and under the law as shown below.  When Judge Buchwald declares

that Fioricet is Butalbital because Butalbital is a component of it, she changes the legal definition of "Drug", as

provided in 21 US Code Section 321 (g) (1).  The relevant portions are as follows:

> The term "drug" means (A) articles recognized in the official United States Pharmacopoeia, official
> Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to
> any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention
> of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or
> any function of the body of man or other animals; and (D) articles intended for use as a component of
> any article specified in clause (A), (B), or (C).

A component of a drug may be another drug, but in such cases it is just a component and not the drug.  Judge

Buchwald's statement requires her to use a different definition.  It is a usurpation of Legislative power.  It was

also her own justification for her usurpation of Administrative power by treating Fioricet like a controlled

substance, as evidenced across the entire proceedings through to today.  The Controlled Substance Act is clear

that it regulates drugs as drugs, not drugs based on components. These are all usurpations of powers not given to

Judges, and all violations of Canons 2 and 3 that govern judicial conduct.

9.      Let us entertain for a second that the definition just provided was stricken from the law, not in the way

Judge Buchwald did for the Plaintiff's criminal proceedings, but legitimately through an act of the Legislature.

There is yet another definition provided by the Legislature that goes right to the heart of the matter of why

Fioricet is formulated as it is, and why it can not be confused with Butalbital. A drug that is made up of multiple

components, some of which may be drugs on their own in their raw state, may be considered a "fixed-

combination drug" as described under Title 21 Chapter I Subchapter Part 300 Subpart B 300.50. The relevant

section is as follows:

> "(a) Two or more drugs may be combined in a single dosage form when each component makes a
> contribution to the claimed effects and the dosage of each component (amount, frequency, duration) is
> such that the combination is safe and effective for a significant patient population requiring such
> concurrent therapy as defined in the labeling for the drug. Special cases of this general rule are where a
> component is added:
> (1) To enhance the safety or effectiveness of the principle active components; and
> (2) To minimize the potential for abuse of the principal active component."

Fioricet is a fixed-combination drug. The definition for Fixed-Combination Drug also allows for a drug to be

made up of other drugs, but it does not make the new drug subordinate in name nor law nor anything else to its

components. A drug may be, and just is in the case of a Fixed-Combination Drug, a combination of multiple

drugs, but that does not eliminate the distinction under the law, and in reality, between the drug and its

components. For Judge Buchwald to declare that Fioricet is Butalbital because it contains Butalbital, she must

also amend or repeal this legal definition. This requires legislative acts, not judicial acts. These are also

violations of Canons 2 and 3. Judge Buchwald is not respecting this legal definition found within the law, she is

not respecting Title 21 Chapter I Subchapter Part 300 Subpart B 300.50, as required by Canon 2 that governs

judicial conduct. Her judicial duties are not taking precedence because she is usurping legislative power by

force-fitting Fioricet into a category based on its component and usurping administrative power because the task

of scheduling drugs is reserved for the Attorney General: so she is also violating Canon 3 that governs judicial

conduct, again.

10.      We cited two definitions above occurring in two places in Federal Law, and now we cite another place

in the law where the first definition is presented. In renaming Fioricet for her own purposes, Judge Buchwald

had to ignore not only the definitions above but also the definitions provided in the Controlled Substances Act in 21 U.S. Code § 802 (12), where "Drug" is defined by sending the reader back to the definition presented above. In a case that involved the controlled substances act, directly in the original charges and covertly by holding the Plaintiff to the face-to-face doctor-patient standard that is only applicable to controlled substances, none of which were dispensed via the fulfillment pharmacy, the judge ignored the definition above that is referred directly to within the Controlled Substances Act.  This is a violation of Canon 2 that governs judicial conduct. By holding the Plaintiff to an inapplicable standard, requiring a face-to-face requirement where only a bona fide relationship is required, Judge Buchwald violates Canon 3 that governed judicial conduct.

11.     How do these definitions impact Judge Buchwald's reliance on Section 812 of the Controlled Substances Act?  It pulls the rug right out from under it.  These definitions refute her within the law she cites.  21 U.S. Code § 812 - Schedules of controlled substances states:

> **(b) Placement on schedules; findings required** Except where control is required by United States obligations under an international treaty, convention, or protocol, in effect on October 27, 1970, and except in the case of an immediate precursor, a drug or other substance may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug or other substance.

Fioricet is a drug, and it "may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug."  The findings required have nothing to do with just naming the drug's components, the law is also clear about that.  The findings required are set forth the Controlled Substances Act 811(a), (b) and (c):

> **(a) Rules and regulations of Attorney General; hearing** The Attorney General shall apply the provisions of this subchapter to the controlled substances listed in the schedules established by section 812 of this title and to any other drug or other substance added to such schedules under this subchapter. Except as provided in subsections (d) and (e), the Attorney General may by rule—
> (1) add to such a schedule or transfer between such schedules any drug or other substance if he—
> (A) finds that such drug or other substance has a potential for abuse, and
> (B) makes with respect to such drug or other substance the findings prescribed by subsection (b) of section 812 of this title for the schedule in which such drug is to be placed; or
> (2) remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule.
> Rules of the Attorney General under this subsection shall be made on the record after opportunity for a hearing pursuant to the rule making procedures prescribed by subchapter II of chapter 5 of title 5. Proceedings for the issuance, amendment, or repeal of such rules may be initiated by the Attorney General (1) on his own motion, (2) at the request of the Secretary, or (3) on the petition of any interested party.
>
> **(b) Evaluation of drugs and other substances**

The Attorney General shall, before initiating proceedings under subsection (a) to control a drug or other substance or to remove a drug or other substance entirely from the schedules, and after gathering the necessary data, request from the Secretary a scientific and medical evaluation, and his recommendations, as to whether such drug or other substance should be so controlled or removed as a controlled substance. In making such evaluation and recommendations, the Secretary shall consider the factors listed in paragraphs (2), (3), (6), (7), and (8) of subsection (c) and any scientific or medical considerations involved in paragraphs (1), (4), and (5) of such subsection. The recommendations of the Secretary shall include recommendations with respect to the appropriate schedule, if any, under which such drug or other substance should be listed. The evaluation and the recommendations of the Secretary shall be made in writing and submitted to the Attorney General within a reasonable time. The recommendations of the Secretary to the Attorney General shall be binding on the Attorney General as to such scientific and medical matters, and if the Secretary recommends that a drug or other substance not be controlled, the Attorney General shall not control the drug or other substance. If the Attorney General determines that these facts and all other relevant data constitute substantial evidence of potential for abuse such as to warrant control or substantial evidence that the drug or other substance should be removed entirely from the schedules, he shall initiate proceedings for control or removal, as the case may be, under subsection (a).

**(c) Factors determinative of control or removal from schedules** In making any finding under subsection (a) of this section or under subsection (b) of section 812 of this title, the Attorney General shall consider the following factors with respect to each drug or other substance proposed to be controlled or removed from the schedules:

**(1)** Its actual or relative potential for abuse.
**(2)** Scientific evidence of its pharmacological effect, if known.
**(3)** The state of current scientific knowledge regarding the drug or other substance.
**(4)** Its history and current pattern of abuse.
**(5)** The scope, duration, and significance of abuse.
**(6)** What, if any, risk there is to the public health.
**(7)** Its psychic or physiological dependence liability.
**(8)** Whether the substance is an immediate precursor of a substance already controlled under this subchapter.

The first thing worth noticing is that Federal Judges do not decide if a drug is a controlled substance, the Attorney General does, after a clearly delineated process that begins in writing from Secretary to the Attorney General. The second thing worth noting is that the first factor (1) under (c) is the potential for abuse, and these factors are to be considered for drugs proposed to be controlled.  These factors are part of the recommendation that will include a recommendation as to which schedule the drug is proposed to be placed under.

The law is clear that this is all done in writing for the drug being proposed for control and scheduling-- the drug, not component-- as per the definitions cited above.  Ignoring this and taking the power of scheduling for herself, Judge Buchwald usurps administrative power and violates Canons 2 and 3 that govern judicial conduct.

12.     Judge Buchwald's phrase at the end of the quote we provide above is more a minefield than a statement: "there is no dispute that Fioricet falls within the category of drugs controlled by 21 U.S.C. § 812", is too

ambiguous to really mean anything, leaving interpretations of it open to revision. Is she saying it is a controlled substance; or is she saying that, if it were, it would be in the same schedule as Butalbital? Either way, it is also a usurpation of Administrative power, an administrative act not a judicial act, because the Attorney General has done neither. The Attorney General places drugs on schedules after making them a controlled substance, after arriving at findings that show such an act is required, recommendations from the Secretary, and then the guidelines provided by legislature may be followed, but it is up to the Attorney General. Judge Buchwald's phrase is a presumption, a prejudice she has over what characteristics Fioricet might have if it had different characteristics than those it does have. The Attorney General has not made Fioricet a controlled substance. The findings have not been made to require it to be a controlled substance, not by the Attorney General and certainly not by Judge Buchwald who has not been empowered by the Legislature to investigate such findings. She must ignore that the formula eliminates the potential for abuse and then she must imagine how a potential for abuse would present itself. The findings made about a drug guide the Attorney General just as much as 812 does in determining the right schedule for a controlled substance, just as the findings or lack there of determine that a drug should not be a controlled substance. It is the case that a component does not a controlled substance make, and it is also the case that a component would not necessarily a schedule make if the findings were made that require the drug to be a controlled substance.

The law is clear and it does not say what Judge Buchwald would have us believe it says. Judge Buchwald has to also ignore the required findings that must be in place for a drug to be made a controlled substance. In none of her pre-trial writings or transcripts does she even care to bother to ask about the drug's potential for abuse. This is the first listed finding that must be made. She disrespects the law by making Fioricet a controlled substance because no finding of a potential for abuse has been made, not by the Attorney General and not even by herself. She is ignoring the law, and violating Canons 2 and 3 that govern judicial conduct.

13.      Judge Buchwald's statement that we cite above, made in June 2014 and repeated in her August 2014 Memorandum, show that when she renames Fioricet by the name of one of its components, she is usurping Legislative power, and performing her own Legislative act. We know this because the matter was already decided by a proper legislative act. Judge Buchwald is wrong. But Judge Buchwald does not only rename the drug in order to create jurisdiction over it in her court room, and then usurps Administrative power in placing it

in the same category as drugs controlled by 812.  She also addresses the drug head-on, using the right name for it, and in so doing she usurps more power to create jurisdiction for herself under the Controlled Substances Act.

At the June 2014 during oral arguments for the Motion to Dismiss the original indictment, Judge Buchwald also stated that "Fioricet remains a controlled substance despite being an exempted prescription product." MEMORANDUM AND ORDER  08/21/14 Id. Pg. 7-8.  The law itself shows she is wrong.  It is also clear from reading the law that one can not just read the law to figure out if a drug is a controlled substance or not.  **The Legislature writes laws and they did not take the authority of making drugs controlled substances for themselves.  Nor do they give it to Judges.  They give that authority to the Attorney General.**  The Attorney General decides if drugs are controlled substances based on very specific findings, and then schedules drugs if the findings made in writing require it.   The law is clear that it is no one's job to figure out in a court room if a drug is a controlled substance.  A drug is made a controlled substance, or it is not, by the Attorney General.  **Fioricet has not been made a controlled substance by the Attorney General.  It can not remain something it has never been.  So, just as her statements above regarding one of Fioricet's components are wrong, indicative of usurping powers she does not have, and violations of Canons 2 and 3, her statement directly addressing Fioricet is also wrong, indicative of usurping powers she does not have, and violations of Canons 2 and 3.**

14.     When Judge Buchwald cited a portion of the Controlled Substances Act, § 812 - Schedules of controlled substances, she was only repeating the section the Prosecutors provided her.  She did not bother to check their source.  Here is more of 812 the Judge had to ignore to make the statements she's made with regard to Fioricet, some of which we already provided, but provide again for completeness:

> 21 U.S. Code § 812 - Schedules of controlled substances
> **(a) Establishment**
> There are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V. Such schedules shall initially consist of the substances listed in this section. The schedules established by this section shall be updated and republished on a semiannual basis during the two-year period beginning one year after October 27, 1970, and shall be updated and republished on an annual basis thereafter.[1]
>
> **(b) Placement on schedules; findings required** Except where control is required by United States obligations under an international treaty, convention, or protocol, in effect on October 27, 1970, and except in the case of an immediate precursor, a drug or other substance may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug or other substance. The findings required for each of the schedules are as follows: …

The law continues, laying out the findings required for each schedule, V, then IV, and we present the required findings for III, which is where Judge Buchwald placed Fioricet, absent of any findings for it, which she then renamed Butalbital to conceal her act.

> **(3) Schedule III.—**
> **(A)** The drug or other substance has a potential for abuse less than the drugs or other substances in schedules I and II.
> **(B)** The drug or other substance has a currently accepted medical use in treatment in the United States.
> **(C)** Abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence.

**Judge Buchwald has to repeal a lot of the law, specifically the parts of the law that are set up as all the requirements needed to be in place for a drug to be scheduled. She skipped right ahead to the scheduling without any findings, and did the scheduling herself based on bad and simplistic assumptions. She was not being a Judge. She was not using the law and logic to adjudicate between the Prosecution and the Defense, she was simply and simplistically being the Prosecutors' parrot. A parrot's act, only repeating back parts of the law given by the Prosecutors, is not a judicial act. It is not even a human act, because Parrots can't read. Judges read the law, not just deceptively selected portions of it provided by Prosecutors who disregard the law. Citing deceptively selected portions of the law is not a Judicial Act, but it is the kind of usurpation of legislative power that both Judge Katzmann and Judge McMahon give cover to in their rulings supporting Judge Buchwald.**

So, the portion of the law cited by judge Buchwald does not say what it says it does. She twists it to conform to the Prosecutor's wishes, the way a caged parrot twists sounds to mimic their owner. It also shows a very clear violation of Canon 3 (A) (1) that governs judicial conduct, because she is just not competent in the law.

15.    The willful ignorance of the law engaged in by the prosecutors and Judge Buchwald, did not have to lead to this miscarriage of justice, if they wanted to follow the law and properly apply the law, because the Administration provides a resource. **The Controlled Substance List created and maintained by the Attorney General of the United States does exactly what its name says it does: IT PROVIDES THE LIST OF CONTROLLED SUBSTANCES. It also indicates alternative names for drugs on it when such names**

exist.  **The list is maintained and published in accordance with the Controlled Substances Act and Title V section 5 specifically cited in the Controlled Substances Act, as cited above. To find the list of controlled substances promulgated by the Attorney General, one has to simply look to the Federal Register, and to find the list of controlled substances promulgated by the Attorney General that was in effect at the time of the Plaintiff's arrest or at the time the alleged acts were committed, one simply has to look at the Federal Register from the appropriate dates. That is where the scheduling and descheduling of drugs is announced, and fair warning to health care professionals is given, as required by law both in 811 of the Controlled Substances Act and in "the rulemaking procedures prescribed by subchapter II of chapter 5 of title 5" which 811 refers directly to.  It shows Judge Buchwald and the Prosecutors are deceiving us all by simply pointing to the smallest portion of a statute and pretending that somehow that indicates Fioricet is a controlled substance.  Its not just a violation of Canon 3, it is a violation of the trust Judge Buchwald was mistakenly given by her appointment as district judge.**

16.     **Fioricet is not on the list, because the Attorney General has not made it a controlled substance.** Even in the case of drugs listed in the Controlled Substances Act itself, they are made controlled substances and scheduled by the Attorney General and listed on the Controlled Substances List provided by the Attorney General. Fioricet, nor any other brand name or generic name used to identify the drug, is NOT found on the Controlled Substances Act.  Butalbital is on the list, and Fioricet is not and it is not listed as an alternative name for it.  Fioricet is not a controlled substance.

17.     At the June 2014 oral arguments for the Motion to Dismiss the original indictment, Judge Buchwald also stated "in my court room Fioricet is a controlled substance." But as we have shown above, it is not.  Fioricet has no known potential for abuse, nor any of the other criteria set forth under Federal law.  What findings are required are set forth the Controlled Substances Act 811 (b) and (c), provided above.  Because of that, it is not listed by the Attorney General on the Controlled Substances list, nor listed in the Federal Register as a controlled substance.  The only "right" part of her statement is the "in my court room" part.  Her statement is a usurpation of administrative power, and a violation of Canon 2 that governs judicial conduct.

18.     3 weeks before trial, most likely realizing their indictments lack of merit was too obvious for them to get away with this sham, and realizing that the Plaintiff was not interested in a plea bargain because she is innocent, the Prosecutors withdrew the indictment and replaced it with a superseding indictment.

19.     The exchange between AUSA Richenthal and Judge Buchwald at the hearing tells us a lot about their ignorance of controlled substances.  Here is their conversation over the matter.  Judge Buchwald tells AUSA Richenthal "I notice that Counts One and Two, the narcotics distribution and conspiracy charges, are dropped despite the Court's opinion denying the motion to dismiss them." The conversation continues:

> Richenthal: "It is just the fact that one of those drug is controlled (Fioricet) is now no longer of legal importance.
> Court: "Did you decide that I was wrong?
> Richenthal: "No, your Honor. We did not decide you were wrong, and this Court is not the only Court to take that view. As a general matter--
> Court: I think I am right. I am not hesitant to--
> Richenthal: "We also think you are right. To the extent we don't think it is necessarily relevant to the trial any more to the extent it came up, we would take the position this was a controlled substances.

Working backwards through their very revealing statements, we learn a lot.  First of all, even though they withdrew the charges, the Prosecutors "don't think it is necessarily relevant to the trial any more to the extent it came up, we would take the position this was a controlled substances." It is also important to note that defects in the original indictment with regard to a lack of specificity are being taken advantage as the Prosecutors have changed how they're going to punish the Plaintiff for having the nerve to refuse plea deals.  How is it not relevant to the trial anymore, when it was the closest thing to a specific act in the original indictment?  Clearly, the prosecutors are just making up a new story because the old one wouldn't work.  It was just too obvious that that Tramadol and Fioricet are not controlled substances outside of Judge Buchwald's court room.  There is no new allegation provided, just a law cited and dates the law was presumed to have been violated, and not by the Plaintiff necessarily, but by unnamed others she allegedly directed to violate the law.  There is no named accuser of these crimes.  There is no one cited in the charges that are making these claims.  It is just a story, to be made up at trial by the Prosecutors.  And it really isn't a story, the charges are so unspecific that either the Plaintiff is the one committing the crime OR she is directing others to.  Which is it?  By merging the two very different, and very unspecific, allegations the Prosecutors avoid directly addressing what law is being violated when people claim the Plaintiff directed them to commit crimes, because that was the allegation, but no law cited showed how

the Plaintiff could be held responsible for other's alleged actions.  And the actions were all only accusations at trial, no evidence of anything was presented.

But another important thing to take from their exchange is that without any specific act alleged to have been committed by the Plaintiff, the prosecutors felt free to make up what ever stories they want knowing that there is no time during a trial to, paraphrasing Mark Twain, chase their lies half-way around the word to refute it with truth.  But these are reasons the charges should not have even gone to trial, there is no act alleged, no injured party against whom the alleged crime was committed, no anything.  Judges are supposed to protect the public and their courts from this, but this judge did not.

By not taking a critical eye to the new charges, and just playing the anvil to the Prosecutor's hammer, the Judge is not acting as a Judge.  She violates Canon 3 that governs judicial conduct.

20.      AUSA Richenthal does not say the Attorney General has placed Fioricet on the Controlled Substances list-- the only thing that makes a drug a controlled substance.  He instead says "this Court is not the only Court to take that view."  There is no view to have, by a court or an AUSA, there is only to look at the law, look at the list published by the attorney general or to comb though the Federal Register.

The Judge also makes a mockery of the law when she asks if the Prosecutors decided she was wrong about Fioricet.  She's sharing the bench with the Prosecutor and thumbing their nose at the Attorney General the whole, because there's only one person in the country who decides if a drug is a controlled substance: the Attorney General.  Ignoring the law requiring the findings to be on the record, and ignoring Title V section 5, is the only way this conversation can happen.

**Most damning is the exchange: "I think I'm right" and "we also think you are right" because it is a huge, though temporary, retreat from her statements in the earlier motions to dismiss.  Again, there is no thinking involved.  If there were, the rule of leniency would apply, because for one to merely "think" means one could just as easily see reasons to doubt.  There's a Controlled Substances List, and the Judge and the Prosecutors ignored it as they were too busy usurping legislative and administrative power and ignoring the law.  The conversation reveals violations of Canons 2 and 3 that govern judicial conduct.**

21.      It is important to note that even though the Prosecutors claim they do not need the "narcotics conspiracy" for the trial, at trial they nor the Judge, refer to the drug by its name, Fioricet.  They and their

witnesses and the Judge call it Butalbital.  So, the alleged narcotics conspiracy nonsense might not have been

needed for their trial, but deceiving the Jury was needed.  Judge Buchwald did not call Fioricet by name at trial,

as it would call too much attention to the deceptions she allowed and engaged in at trial, but after trial as she

regains her confidence as she sends the Plaintiff off to jail where she expected this matter to die.  In denying the

Plaintiff's bail pending appeal, the judge finally, after over a year, calls the drug by its name and only upon the

Plaintiff's request to her to use the right name.  She also claims all the drugs dispensed were controlled

substances, in total disregard for the law, and displaying her of the evidence she was presented and displaying

her prejudice against the Plaintiff.  It's obvious that the Judge's choice of names, and when she chose to use

those names, served the purpose of deceiving the jury and anyone reading the trial transcripts and the sentencing

transcripts.  These are not judicial acts, but prejudicial acts.  By using the wrong name for the drug dispensed,

Judge Buchwald fully intends to prejudice anyone hearing her or reading the transcript against the Plaintiff.  She

uses the wrong name out of a contempt for the definitions of the word Drug and the phrase Fixed-Combination

Drug, as discussed above in violation of the law and Canons that should guide her conduct.

      Her allowing of Fioricet to be called Butalbital allowed the Prosecutors to deceive the Jury about what

the MURP reports said.  The MURP report is a record of drugs that are returned and destroyed by the wholesaler.

Returned medicines must be destroyed.  When medicine is returned to a pharmacy, it is recorded, and it gets

returned to the wholesaler who destroys it. The MURP report is made by the wholesaler.  The Prosecutors

alleged that people who claimed to re-dispense returned drugs instead of destroying them were directed to by the

Plaintiff, absent of any proof and absent of any law that holds her responsible for their actions.  If those

individuals did as they claimed, it would be a kind of misbranding.  It probably never happened.  The

prosecutors presented no evidence of dispensed drugs that were re-dispensed returned medicines, they presented

no witness that claimed to have received such medicines.  The accusation came from employees who claimed

they did this under the Plaintiff's direction.  So, a crime is confessed to, no evidence is presented for other than

the confession, but the blame is shifted to the Plaintiff with no statute cited that states how the Plaintiff is

responsible for others actions in this regard.  Regardless, the Plaintiff is certain, in spite of how this was handled

at trial, that this crime did not occur because the MURP reports disprove the allegation.  The amount of returned

drugs matches the amount that the wholesaler destroyed.  For each drug returned to the pharmacy, the same

amount was destroyed by the wholesaler and the wholesaler's report shows that. After Steven Goloff failed the state's inspection of the pharmacy, the pharmacy recorded all drugs returned and destroyed all drugs by returning to the wholesaler. How the prosecutors pretended the MURP reports did not refute their knowing use of perjured testimony with regard to the destruction of returned medicines? They pointed out that "Butalbital" was not on the MURP report. It wouldn't be, because as stated above no retail pharmacy carries "Butalbital". The MURP report shows the Fioricet destroyed by the wholesaler, and that matches, as it does for all the other drugs on the MURP report, the amount returned to the pharmacy. The Prosecutor's deception over the MURP report was made possible only Judge Buchwald's name-change of the drug. Without the MURP report it would just be an empty allegation with absolutely no physical evidence and no person claiming to have received re-dispensed medicines. With the MURP report read intelligently, the allegation is completely disproved. But, due to the willful disregard for the law that defines a drug not as a component but as its own entity, Judge Buchwald's allowing of Fioricet to be called Butalbital actually prevented the Jury from understanding the report. She mislead the Jury. This is obviously a violation of both Canon 2 and 3 that govern judicial conduct as well as a violation of the trust mistakenly placed in her when she became a federal judge.

22. The Prosecution's witness Goloff lied to inspector Bat and on the stand concerning re-dispensing returned medicines. Goloff lied because he was written up for violating pharmacy law PRIOR to the PA BOP's inspection. Goloff resented the Plaintiff for holding him accountable for being a bad pharmacist. Unfortunately, the District Court withheld the unredacted evidence. To emphasize, Goloff has a history of lying to officials about other health care professionals, including but not limited to Dr. Haytmanek. Inspector Bat, instead of "inspecting" took an easy paycheck  by relying on hearsay testimony.

In any event, the MURP reports, read intelligently and not in the way it was made unintelligible by Judge Buchwald's changing of the drug's name at her show-trial stage, that "all" returns were properly disposed of. The Prosecution lied, and the Judge knowingly allowed the lie, by setting up a trial through all the pre-trial wrangling over the drugs name, to present the lie to the Jury that Butalbital was Fioricet, and then they misrepresented the meaning of the MURP report to imply that any returned drugs in question was not destroyed. The Judge was intent on denying the Petitioner's Bail Pending Appeal because once the Petitioner's case is made

before an impartial and fair-minded appeals court, her lies will be exposed for what they are and her acts of fraud will be self-evident to everyone.

23.      The only misbranding claimed about Tramadol and the only other possible misbranding claim about "Butalbital" was that a face-to-face doctor-patient relationship standard was not met. So, it still was presented as if it were a CSA violation even though it could not be. This is akin to saying it is a crime to eat a salad with a salad fork. It was also presented to the jury in an intentionally confusing way, where it was called at times a "bonafide face to face relationship". At no point did the Judge clarify the standards for the Jury: where either of the actual standards of face to face or bonafide applied, that "face to face" did not apply, nor did the Judge clarify that a "bonafide face to face" relationship was just made up to confuse them. By telling the Jury that a face to face relationship was required for any of the drugs dispensed via the fulfillment pharmacy, the Prosecutors, empowered to do so by Judge Buchwald, deceived the Jury into seeing a kind of misbranding that did not exist. The judge was a party to this deception of the Jury, fraud on the court, because she was not interested in justice. These violate Canons 2 and 3 that govern judicial conduct.

24.      In fact, Count 2, 3, 4, and 5 of the Superseding Indictment failed to allege that the Plaintiff sold misbranded drugs without valid prescriptions (face to face) because it failed to name any drugs or specific prescription. Counts 2, 3, 4, and 5 of the Indictment failed to charge any actual specific offense. Again the Trial Court, the prosecution and its witnesses, deceived the jury by not mentioning a drug name because only controlled substances, under the Controlled Substances Act, required valid prescriptions for dispensing. In fact, the Online Pharmacy Safety Act (S2002) introduced legislation which would have required valid face to face prescriptions for NON controlled substance prescriptions ordered online did NOT pass.

The Government also claimed these unnamed and unspecified prescriptions were not valid because there was "no bonafide face-to-face" relationship between a doctor and his patient; but there are two glaring problems with this. Firstly, a "bonafide" relationship is the standard for all prescriptions a doctor writes for a patient, and there a wide range of ways a doctor and patient can have a bonafide relationship. But, a "face-to-face" relationship is only required for Controlled Substances. In order to confuse the jury, the government made up this compound phrase. Secondly, to hold a pharmacist responsible for this without any physical evidence or any specific prescriptions named requires a number of leaps in logic. The Government's claim in this regard is an

attempt to shift blame away from the doctors, if there is any genuine blame, shifting the supposed blame to the

Plaintiff.   There is no formal assessment for a pharmacist to determine whether there is a bonafide relationship

between a doctor and his patient, that relationship is between them; there is no established criteria under federal

law for a pharmacist to know if the doctor consulted their patients. The signatures on the prescriptions are the

doctor's promise to the rest of the health care community and the patients, that the prescriptions are valid and

that their job was done properly.  A relationship could in fact exist and be denied at trial, as the doctors testifying

at the criminal trial against the Plaintiff in this civil action were only testifying to avoid their own jail time for

other crimes.   On top of this, the Plaintiff, before filling these fulfillment pharmacy prescriptions, actually

required doctors to fill out and submit forms stating that they did phone consult directly with the patients.

Evidence of this requirement that went above and beyond the requirements under the law was withheld by the

District Court because it was physical evidence that would directly contradict testimony of one of the

prosecution's witnesses.

       **None of this changes the fact that the Prosecution's and the district court's applying of the face-to-face requirement to non-Controlled Substances is a deception, deceiving the jury that the Controlled Substances Act's requirements for valid prescriptions was meant to be applied to NON – Controlled Substances.**

25.     **The Judge also presented to the Jury another completely made up standard that has no place in law and held the Plaintiff to this made up standard at trial and at sentencing.  This is a wholesale usurpation of Legislative power.  Judge Buchwald placed regular prescription drugs, drugs that we have shown above were not controlled substances and had no known potential for abuse, into a "made-up" category that NO drug has ever been placed in, a category she called "highly addictive pain meds" sometimes calling it "addictive pain meds". This latter phrase was made up by the executive officials AUSA Richenthal and Greenberg, who were indulged in this by the District Court, without any facts to back up the invention of this phrase nor any references to scientific, medical, pharmaceutical or pharmacological literature (T.1768).  This was done to prejudice and profile the Plaintiff; in fact, NONE of the drugs the Plaintiff dispensed via the "fulfillment" pharmacy were classified as "pain meds" (T.1768), or a controlled substance at the time of dispensing.  The use of the word "addictive" itself is**

problematic. As the American Society of Regional Anesthesia and Pain Medicine provides great resources on the topic. No drugs, not even actual opioid pain meds, are called "addictive": they have a potential for abuse. The abuse of such drugs may lead to addiction. Addiction is considered a behavior with a wide range of causes and contributing factors. Abuse of medicines with potentials for abuse may lead to addictive behaviors and even addiction. It is this concept of potentials for abuse, and the range of those potentials that are a guiding force behind the Controlled Substances Act: it was never meant to be a playground for overzealous and immature prosecutors to create ways to lock up and shame conscientious professionals.

**Shockingly, there was no physical evidence, no prescription, no invoice, no inventory nor bill of laden of Butalbital, nor a name of a "highly addictive pain meds" introduced at trial, because there were NONE.** There were no controlled substances dispensed by the Plaintiff or anyone in the pharmacies via the "fulfillment pharmacies", as the District Court claimed in denying the Plaintiff's bail pending appeal. A motion requesting her to name ONE controlled substance or "highly addictive pain meds" that the Plaintiff dispensed, Judge Buchwald has not respond to this motion because there were NONE.

**The Legislature created the Controlled Substances Act to regulate drugs that have the potential for abuse. There is no category called "highly addictive pain meds" and the legislature did not create a law governing them. Judge Buchwald usurped Legislative Power by using that made up term that has no basis in law, and presented it to the Jury as if meant something under the law.** By usurping legislative power in this way, Judge Buchwald doesn't have to usurp Administrative power to place drugs in her made up category, because its highly likely that, in the law she wrote in her head, district Judges in the Southern District of NY are the parties responsible for placing drugs on this made-up list, upon recommendation from Prosecutors more interested in padding their resume than justice.

26.     Even though the "narcotics conspiracy" charges were dropped, and the superseding indictment didn't claim violation of the CSA, instead claiming violations of the Food Drug and Cosmetics Act, **the standard cited only exists in the Controlled Substances Act and only exists for Controlled Substance prescriptions**. These entire criminal proceedings have been an exploration of how many ways misguided prosecutors and judges can misapply the Controlled Substances Act to drugs that are not controlled substances. That much has been consistent throughout these proceedings as she used faulty reason after faulty reason to justify her usurpation of

powers and her refusal to dismiss either of the flawed documents.  Of course if a jury is told something is a crime, such as eating a salad with a salad fork, they would return a guilty verdict against all who know one fork from another.  But this is not a misconstruing of etiquette, it is abuse of judicial power and fraud on the court and violations of Canons 2 and 3 that govern judicial conduct.

27.      To complete this deception of the Jury, the Prosecutors did not present as evidence any of the prescriptions or medicines received.  If the drugs dispensed or the prescriptions were presented as evidence, they would clearly not be Butalbital, but Fioricet.  There are brand names and generic names for the drug, but it would never name just one component because that would create confusion.  The confusion it would create is three-fold: 1) Butalbital is a controlled substance, Fioricet isn't; 2) Butalbital ships as a powder and is used in manufacturing or in compounding pharmacies, not retail pharmacies, Fioricet at the time only shipped as tablets; and 3) Butalbital, when it was prescribed, was for insomnia, Fioricet is for tension headaches.  Fioricet is an old and reliable medicine, and it is common knowledge in the health care professions that it is not a federally controlled substance.

In fact, the pharmacies dispensed Fioricet, which ships from the manufacturers as a tablet, is a NON controlled substance which does not require a valid prescription, the pharmacies never dispensed Butalbital, not on the dates that the indictments claim the crimes were committed and not ever.  The pharmacies never received Butalbital from any manufacturer, they had no use for it.  The Plaintiff was not working nor present at the pharmacies where the alleged crimes supposedly took place on the days of the alleged criminal activity.

Butalbital is clearly not the same drug nor an analog, nor has the same strength, indication, or even in the same drug category or classification as Fioricet.  They are 2 different drugs for 2 different treatments and neither are in the pain med category.  Fioricet and Butalbital are not interchangeable drug names.  Fioricet is indicated for tension headache while butalbital is indicated for insomnia.  Fioricet as a fixed combination drug is manufactured such that it has no potential for abuse, containing Butalbital 50mg, Acetaminophen 325mg, and caffeine 40mg.  Butalbital is not the same drug as Fioricet because in its raw state, Butalbital has a potential for abuse.  When incorporated in Fioricet that potential for abuse is eliminated.  Long before a patient could be addictive to Fioricet, he would be hospitalized for liver toxicity from the acetaminophen in the same way he would if he abused over the counter Tylenol because Tylenol's active ingredient is acetaminophen.

In summation, the references to Butalbital in the indictment and at trial is false and misleading.  It was NEVER in the possession of the pharmacies, never stocked by the pharmacies, and never distributed to the pharmacies by a distributor or manufacturer.  Instead NON controlled substances were intentionally referred to by the wrong drug name and represented to the jury as controlled substances or "highly addictive pain meds".

Further, the suppressed video recordings, which will be expanded in item #35, showed the Plaintiff never handled nor dispensed "butalbital tablet"; the suppressed video recording will confirm that "butalbital tablet" was not stocked at the pharmacies, and the conviction of the plaintiff was ultimately for a NON-controlled substance, Fioricet.  "Butalbital tablet" does not exist and is not manufactured by manufacturer.

It must be stressed that Judge Buchwald's statement in denying the Plaintiff's bail pending appeal, that all the drugs dispensed by the Plaintiff were controlled substances is not just false, but it is ignorant, it is prejudicial, and reflects the prejudicial attitude Judge Buchwald held against the Plaintiff over the entire course of events through to today.  It is not some oddity that Fioricet is not a controlled substance.  It is not because ultimately it also should not be and this is correctly reflected in that the Attorney General has not placed it on the Controlled Substances List.  The formula of Fioricet distinguishes it from its components in two significant ways: it eliminates the potential for abuse by way of the inclusion of Acetaminophen, and the synergistic effect of the three components make it a safe effective medicine for tension headaches.  Butalbital alone was used for insomnia, but it is not used anymore except as a component of other manufactured drugs or in compounded drugs. Acetaminophen alone is a pain reliever, the same class of drug that Tramadol is (and the Judge is saying the prescriptions dispensed by the fulfillment pharmacy for Tramadol in 2012 were controlled substance prescriptions even though they were not).  These are not "pain meds", as the Judge called it these drugs out of her absolute ignorance, which is a term used for Schedule II drugs meant for extreme pain.  Caffeine when used alone needs no explanation.  One might ask, how does the inclusion of Acetaminophen eliminate the potential for abuse?  Taking too much Acetaminophen, be it in Tylenol or Fioricet, will hospitalize someone for liver damage.  This will happen long before any potential for abuse manifests itself.  They will not abuse or even become addicted to Fioricet, the potential for abuse in Butalbital will not be a factor at all in Fioricet. Fioricet is a fixed-combination drug formulated to eliminate a potential for abuse.  The Attorney General has not made any findings that show Fioricet has a potential for abuse because it has none.  This is the key to it all.  Judges do not

asses drugs BY LAW, and it is not a judicial act to ignore the fact that it is the Attorney General's job, and no one else, to assess drugs for scheduling.

Judge Buchwald's creation and application of standards not found under the law by the judge to hold the Plaintiff responsible for self-confessed crimes of the Prosecutions' witnesses without any evidence of the crimes occurring and no evidence that showed the Plaintiff's responsibility in any sense of the word are acts that usurp powers she does not have and violations of canons that  that govern judicial conduct.

## ARGUMENTS

**ARGUMENT  1.  Lasher's Amended Motion for a Fatico and/or a Forfeiture Hearing** in which the District Court clearly violated the  Excessive Fines Clause of the Eighth Amendment and the Supreme Court Ruling of Honeycutt v US as detailed below.

The court has NO basis for the forfeiture whereas she racially discriminated against the Plaintiff and instill onto the Plaintiff a forfeiture of 2.5 million BECAUSE (including but not limited to):

a. There is NO victims
b. The Plaintiff did NOT own the  pharmacies
c. The Drug Butalbital never existed in the pharmacies and tramadol was not a controlled substance at the time of dispensing; None of the allegations were "crime". United States of America  vs. Titilayo Akintomide Akinyoyenu.

The Court then claimed the Plaintiff is "misreading the law" in that Fioricet is NOT a controlled substances. Again, the Court is wrong as detailed above.

To clarify, Fioricet is NOT a controlled substances as per Exhibit A. The Plaintiff did NOT misread the law; she read the law the same way as EVERY state in the United States of America. In fact,  In September 2014, the state of West Virginia took steps to protect their own health care communities from capricious and illegitimate prosecution like the one the Plaintiff experienced. Theirs may be the only time a drug is placed by a state onto its own controlled substances list where the reason they cite was "confusion", but that's the reason they cited. Rather than allow federal prosecutors and judges to prosecute Fioricet as a controlled substance in the absence of the administration making it one, as is required by law, West Virginia took upon themselves citing "confusion" to hold their own health care communities the federal prosecutors and federal judges are imposing on the community without passing a law or adding Fioricet to the Controlled Substances list that would justify it. (See Exh A)

The Government also claimed Lasher is not entitled to a "hearing" on issues such as forfeiture that were litigated years earlier. However, the Government is wrong; this issue was never litigated and the Government cannot prove that it was EVER litigated. Further, Lasher is entitled to a hearing because the Government and trial Court  LIED to the jurors that the Plaintiff dispensed "highly addicted pain meds", a phrase they made up; such term does not exist under the law nor in any medical literature. Further, the Plaintiff did not even dispensed ANY pain meds via the fulfillment pharmacy. If the jurors had known of their deception, the Plaintiff would have NEVER been convicted.

Furthermore, According to the Petitioner's PSI Report, "Victim info was requested from the Government and is awaited". To confirm, as of today there is no victims list. The forfeiture was ordered without evidence of one single witness receiving tampered/misbranded drugs. In fact, no witness could have received "butalbital" because "butalbital" NEVER existed in the pharmacies. According to Carnesi v. US (US District Court NY 3/18/2013), a failure to determine identifiable victims' losses within 90 days after sentencing is a harmless error. To commit a crime, there MUST be a victim. Because there is no "victims", the Plaintiff's forfeiture must be vacated, as well as due to the ruling of Honeycutt v. United States.

Also, as in Honeycutt v. United States , the Petitioner had no controlling or ownership interest in the pharmacies and did not stand to benefit personally from the sales of the prescriptions, she was ordered to forfeit $2.5 million dollars while the "OWNER" Peter Riccio was ordered to forfeit only $321,572.31, showed judicial bias. All she received was her wage, and often times less (See Exh J -civil judgment – on file with the District Court). Due to the recent opinion of the Supreme Court, Honeycutt v. United States, U.S. No. 16-142, 6/5/17, the Court can not forfeit her $2.5 million when she did not have any interest at stake in the pharmacies nor profit from the proceed of the pharmacies; she should not be held jointly and severally liable for property that her "co-conspirator" derived from the "crime" that she herself did not acquire. Therefore, her forfeiture must be vacated and the Court MUST follow the Supreme Court's decision of Honeycutt; thus the Petitioner is challenging her forfeiture. The Government has no right to take proceeds from one who never had them, as in Honeycutt.

Further, This pharmacy business was NOT the Petitioner's  business, as the Government and the Court falsely implied. Also, bank accounts were never controlled by the Petitioner, of which the Government knew and later dropped the money laundering charge; there was no evidence that she received funds by wire from website

operators, as the PSR report inaccurately stated. In fact, the Petitioner has never billed web operators, never received funds by wire, never had access/control to any account, as the suppressed video recordings depicted. She was merely an employee who relied on the direction of owner Peter J. Riccio to make sure everything is legal and comply to the law; he told her verbally and in many emails that the prescriptions were legal because his lawyers made sure they were (email dated 11/4/10, 4/6/11, 6/16/11, 6/25/11, 7/3/11, 7/5/11, 8/9/11, 9/28/11, 10/13/11, 10/14/11, 4/7/12, 8/8/12, 10/17/12, 11/5/12, 1/1/1/13).

At trial, the issue of being a signatory was never mentioned because the Government knew that the Petitioner never signed any check nor had any control over any bank accounts. The 2 signatories who signed checks and controlled bank accounts were Peter Riccio (owner) and his office manager (Laura Hishmeh). Mr. Riccio told the Petitioner that he took her off the accounts as a signatory, and made Laura Hishmeh the signatory; this was why the Petitioner believed she was not a signatory. However, after the Indictment, she was shocked to learn that Mr. Riccio was not forthcoming; he kept her as a signatory and never added Hishmeh as one. A civil action has been filed against both Riccio and Hishmeh for, including but not limited to, forging the Petitioner's signature on bank and credit card documents as well as pharmacy contracts, that gave the false impression that she was an owner of one or more of the Riccio pharmacies, and that she was in control of the bank accounts referencing her name (See Exh K – on file with the District Court).

The Petitioner has always worked very hard for everything she achieved in life. Also, the Government knew that the owner Peter Riccio conscientiously cheated her out of her pay (See Exh J – on file with the District Court); yet the Government continued to victimize her by suppressing the remaining nine video recordings.

The aforementioned maintains sufficiency for the Petitioner to challenge the forfeiture judgment due to the fact the "butalbital tablet", the drug the Defendant was charged, convicted, and sentenced of, was never introduced at trial; it NEVER existed in the pharmacies. Thus, the Petitioner is requesting as a cause to exist, including but not limited to, the "Riccio's pharmacies" and wholesaler (McKesson) inventory, invoices, bill of laden, prescriptions, of "butalbital tablet", for an evidentiary hearing.

The evidential hearing is a means to prove not only the prosecution's violation, but also the proof of innocence to present evidence which contradicts the Government and its witnesses' testimonies. As a result of violation of due process, and with the profound and compelling facts and exhibits of evidence that clearly prove

the drug "butalbital" never existed in the pharmacies, the Petitioner's forfeiture must be vacated, immediately. This claim is entirely RELEVANT to her conviction.

In fact, Civil Asset Forfeiture Reform Act of 2000 (Pub.L. No. 106-185, 114 Stat. 202), which requires federal prosecutors to show a substantial connection between the property and the crime. In this case, they did not prove that because there were NO VICTIMS . In addition, the Reform Act allows forfeiture to be vacated when the Plaintiff can demonstrate that forfeiture causes a hardship.

Also, the law permits VICTIMS to sue the government for any damage  if they prevail in a civil forfeiture action, in this case, there are NO victims involved.

Because neither a fatico nor any evidence supports this forfeiture, and because it proceed with no notice nor a hearing before a court, the Petitioner may argue that a forfeiture violates the Due Process Clause of the Fifth and Fourteenth Amendments.  In this case, the trial court also violated the Excessive Fines Clause of the Eighth Amendment in that at sentencing, she stated the pharmacies made 1.25 million dollars; yet she instilled a 2.5 million dollars forfeiture against the Plaintiff, clearly a violation of the Excessive Fines Clause of the Eighth Amendment. See US v Alexander

Further, according to the US Department of Justice Criminal forfeiture is an action brought as a part of the criminal prosecution of a defendant. It is an in personam (against the person) action and requires that the government indict (charge) the property used or derived from the crime along with the defendant. If the jury finds the property forfeitable, the court issues an order of forfeiture. In this case, forfeiture was done without the jury, and it was ILLEGALLY done, including but not limited to:

* The drug "butalbital" NEVER  existed in the pharmacies

* Tramadol was not a controlled substances at the time of dispensing

* No actual physical evidence of misbranding was presented.

### Argument 2. Lasher's Motion for Statements of Witnesses

The Court denied Lasher' motion for statements of witnesses because the Government claimed that Lasher has received materials years earlier. However, the Government lied to further suppress evidence to protect Dr. Konakanchi and Burling's purgered testimonies.

Because Lasher NEVER received statements from Dr. Robert Imbernino (and Peter J. Riccio), which contradict Dr. Burling and Dr. Konankanchi's statements, and would concur with Lasher's testimonies, the Plaintiff is entitled to ALL Statements of Witnesses which she sought but NEVER received.  Because these statements and the suppression of that showed that the prosecutors knew their case against the Plaintiff was built entirely on false testimonies with no physical evidence whatsoever to back any of it up. Maryland v Adnan Syed

### Argument 3. Lasher's Motion for a New Trial

The Government claimed Lasher's motion for a new trial should be denied because it was untimely filed. However, it was clearly timely filed.

Rule 33 requires that a motion for a new trial grounded on newly discovered evidence be brought no later than 3 year from a verdict OR FINDING OF GUILTY, which was September 2, 2015, the day of the judgment of conviction.

In fact, according to "Committee Notes on Rules—1998 Amendment

"As currently written, the time for filing a motion for new trial on the ground of newly discovered evidence runs from the "final judgment", which is September 2, 2015, the judgment of conviction.

According to Black's law dictionary, judgment:

The official and authentic decision of a court of justice upon the re- spective rights and claims of the parties to an action or suit therein litigated and sub- mitted to its determination. People v. Ile- bel, 19 Colo. App. 523, 70 Pac. 550; Bullock v. Bullock, 52 N. J. Eq. 501, 30 Atl. 070, 27 L. R. A. 213, 40 Am. St. Rep. 528; Eppright v. Kauffman, 90 Mo. 25, 1 S. W. 730; State JUDGMENT GG5 JUDGMENT t. Brown & Sharpe Mfg. Co., 18 R. I. 10, 25 Atl. 240, 17 L. R. A. 850. The final determination of the rights of the parties in an action or proceeding. Pear- son v. Lovejoy, 53 Barb. (N. Y.) 407; Harbin v. State, 78 Iowa. 2G3, 43 N. W. 210; Bird v. Young, 50 Ohio St. 210. 40 N. E. 819; In re Smith's Estate, 98 Cal. G36, 33 Pac. 744; In re Beck, 03 Kan. 57, 04 Pac. 971; Bell v. Otts, 101 Ala. 180, 13 South. 43, 40 Am. St. Bep. 117. The **sentence of the law** pronounced by the court upon the matter appearing from the previous proceedings in the suit. It is the conclusion that naturally follows from the premises of law and fact. Branch v. Branch. 5 Fla. 450; In re Sedgele.v Ave., 88 Pa. 513. The determination or sentence of the law, pronounced by a competent judge or court, as tho result of an action or proceeding instituted in such court, affirming that, upon the matters submitted for its decision, a legal duty or liability does or does not ex- ist. 1 Black, Judgm.

**I. The Government claimed Lasher's jury instruction and indictment-based claims rest on Two drugs**, without naming the drugs. Also,  Richenthal does not address the Judge's intentional confusion of the jury when she did not name any drug but ambiguously asked the jury if they found the Petitioner's misbranding of two

drugs. Instead, Richenthal relied on his previous faulty argument about Fioricet being a controlled substance. Fioricet was not mentioned at trial nor in the jury instruction. Instead, the Judge and Richenthal misrepresented Fioricet and called it Butalbital; If they were so confidence, they would not have to stoop to that deception.

The prosecutors have yet to show:
A. how the Plaintiff is misreading the law.
B. When the attorney general made Fioricet a controlled substances. The fact that neither Fioricet nor tramadol was a Controlled Substance was both raised in pretrial motions and addressed in the pretrial hearings. the fact that the judge rejected both of those motions, using clearly faulty reasoning for Fioricet and simply lying about her reasoning for Tramadol, is addressed in detail above.

The Prosecution yet to justify their skipping over nearly the entire law and all the requirements for scheduling . The law does not support their argument. Fioricet is not a controlled substance. The prescription for Fioricet was not misbranded The face to face requirement does not exist in the law cited in the charges. They did not cite the CSA in the charges  because it is not applicable. They cannot say that prescriptions for Fioricet violated the law they cited nor the CSA because they cannot show that Fioricet was a controlled substances. The only way to show Fioricet is a controlled substance is to find it in the Federal Register where the Attorney General made it a controlled substance or to find it on the Controlled substances List. Anything short of that is just smoking mirrors.

But that is just one drug, one drug that was never named at the trial. What is the other drug? Tramadol? Tramadol was not a controlled substance at the time of the indictment. Richenthal does not address that fact because he knows he is wrong and he knows that the Plaintiff is wrongfully convicted.

The Plaintiff has shown through all of her recent motions that all of the allegations made by the Prosecution was lies. The Plaintiff has also shown that nothing in the trial showed her misbranding any prescriptions. This confusion question posed to the jury is a tacit acknowledgment of that fact by the judge quite simply put. The prosecution and the judge hope the jury would convict the plaintiff based on the lies told about the opium and oxycodone prescriptions because that's what they spent most of the trial on. The newly discovered exculpatory evidence show beyond any question that the prosecutors knew the allegations were lies when they

presented it to the jury. Richenthal has been lying about the Plaintiff from the original narcotics conspiracy charges to all the way through today, and he knows it.

## II. Video recording

The Government claimed that the Court denied the Plaintiff the SUPPRESSED video recordings – "for good reason." but they don't state what that reason is. The reason is clear in that they wanted to talk to the jury about videos without showing them. They want to make sure the Plaintiff did not have a chance to see the video to show that she is innocent. The Prosecution and The Judge's reasoning amount to corruption and deception of the jury intentionally.   The video shows that the Plaintiff did not do any of the act they alleged, no remote supervising, no calling of licensed professional of other pharmacies to commit crime, inspite of how ridiculous that allegation is. Perhaps most importantly the video show the witnesses lied about the Plaintiff and the allegedly disheveled oxycodone addicts on October 2, 2012. The one thing the video show is the prosecution knowingly use false testimonies and knowingly made false allegation against the Plaintiff, that is why the video was suppressed, and Richenthal know that; this is also another reason why they tampered with the evidence. That the evidence remains exculpatory after their tampering is indicative of just how crooked these prosecutors are. The tampering and other important facts about this exculpatory evidence is detailed below.

The Government also claimed that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." In this case, because it has now been shown that the Government's case was built entirely on lies that they knew to be lies, and based on standards that does not exist in the law, and based on deceptions and ambiguity meant to mislead the jury, the cogent and compelling reasons needed are obvious. More cogent and compelling reasons are in section III. PA Board of Medicine's Order that showed the prosecution knew they were lying about the opium prescriptions.

The Court clearly violated the Best Evidence Rule by allowing the Prosecution to suppress the video recordings, as per Exhibit B (Trial judge denied the subpoena of the video recording – exhibit is on file with the District Court), Exhibit C  (On November 7, 2016, through the Plaintiff's own investigation, she received verification from FOIA that the Government not only had the original video surveillance recording, of which they returned, this very crucial piece of evidence, to the Defendant Peter Riccio, without providing a copy to the

Plaintiff, thus Foia confirmed the Government suppressed the video recording – exhibit is on file with the District Court), and Exhibit D (trial attorney in his letter dated 2/15/17, again confirmed he never received the video recordings – exhibit is on file with the District Court; letter affirmed the Government suppressed the video recording) to prevent the Plaintiff from showing the whole world her actual and factual innocence.

A.      The Prosecution and the trial Court deceived the jury that the Controlled Substances Act or any federal law makes one pharmacist responsible for another pharmacist's actions by accusing the Plaintiff of forcing the prosecutors' witnesses to break laws by supervising them remotely via phone and cameras. However, there is a number of problems with this accusation.

First of all, there were no crimes committed at these pharmacies by the Plaintiff. That statement stands in stark contrast to the prosecution's and its witnesses fiction created at trial, but it remains true; no crimes were committed.

Secondly, there is video evidence, work schedule, time cards, and EZY passes evidence of the Plaintiff working at a pharmacy in New Jersey on all the dates that the alleged crimes took place in the Indictment (6/1/2012, 6/12/2012, 7/16/2012, 7/17/2012, 8/13/2012, 8/16/2012, and 8/27/2012), that clearly showed she was not remotely monitoring or supervising, nor directing employees in other locations to commit the alleged crime. This video recording was both suppressed and withheld and only came to the Plaintiff's possession in August 2017. The video recordings proved the Plaintiff's ACTUAL innocence; they showed the daily activity of the work flow in the pharmacies and that the Plaintiff abided by all pharmacy law and regulations in that she properly counted, labeled and stored, destroyed medications properly, and dispensed medications with valid prescriptions, all verified by doctors; yet, this was contradicted by the prosecutors' witnesses sworn testimony, including those of the Pennsylvania Board of Pharmacy's pharmacy inspector THOMAS BAT, an executive official. Even though the Government only provided the Plaintiff with 2 months of the video that they confiscated from the pharmacies at the time of the arrest and refer to it at trial without showing it, it is sufficient to see the consistency in the plaintiff's work; that she did not violate any law. In this case, all prescriptions were hand counted. This act is CONSISTENCY shown throughout all of her places of employment that she abided by all the rules.

Thirdly, **there is no federal law describing how one pharmacist can be held responsible for another pharmacist's actions. The only applicable law that provide directions or oversights to pharmacists and their actions in pharmacies is the pharmacy law (PA27.12(b)(2)). PA 27.12(b)(2) is the governing pharmacy law for theses matters, and it is not in conflict with any federal law.** The governing pharmacy law (PA27.12(b)(2) and the criminal statute 21 U.S.C. 321 (g)(1), 352 (a), 352(c), 353(b)(1), and 353(b)(4)(A), and 21 USC 331(a) and 333(a)(2) require for the accused to be present at the pharmacy at the time the specific prescriptions in question were filled. The Plaintiff was NOT on duty on the Indictment dates, as evidenced by the video recordings, work schedule, time cards, and EZY passes.  She can not be guilty of a crime she was not there to commit, and which she did not agree to commit, nor for an act that she did not condone. Because of potential biases and to avoid any shifting of blame, the pharmacy law eliminates any double standard or shifting of blame; each pharmacist is accountable for his actions and can NOT shift blame to someone else.  It is the job of any pharmacist while on duty to ensure they themselves follow all laws, regulations, and policies; any misdeeds or mistakes are the responsibility of whoever made the misdeeds or mistakes. Further, any pharmacist on duty also serves as a "supervisor" of themselves and their technicians and is accountable for his shift.  Thus it is impossible for her to "conspire with" or aid and abet because the governing laws do not hold her accountable for other employees' actions. These facts about the governing pharmacy law are common knowledge among pharmacists. That pharmacists are responsible for their own actions and cannot blame their conduct on anyone else, be they a pharmacist in charge, a supervising pharmacist, or even the actual pharmacy owner.

To summarize, Judge Buchwald usurped legislative power over the parts of the allegations in the charges that the Plaintiff directed others to misbrand drugs.  There is no law, federally or state that holds one licensed professional for the acts of others, but that is what happened at trial.  The state law, and no one has ever implied that the state law was not the governing law in the pharmacy for this matter, because there is no federal law that applies, are written to specifically prevent pharmacists from shifting blame for their own misdeeds to others. But, in the absence of any crime perpetrated by the plaintiff and in the absence of any evidence of wrong-doing on the part of of the Plaintiff, the Judge allowed self-confessed criminals to confess their own misdeeds and blame the Plaintiff for them.  There was no evidence, just blame shifting.  Evidence that contradicted their testimony was withheld.

B. The Judge withheld exculpatory video evidence. Although the Plaintiff's counsel informally requested the video evidence before the trial, a formal request to the judge to subpoena this evidence was made on August 31, 2015, before sentencing.  The Judge refused this request without giving a reason.  Had the judge considered this evidence, and granted the request, she would have known that  it shows the ACTUAL innocence of the Plaintiff, and shown how the government misrepresented her actions on the dates of the indictment, and they would have seen the government's tampering of the exculpatory evidence.  It specifically refutes three claim made by the government: 1) that she dispensed Oxycontin on October 2, 2012 by proving she wasn't there at that pharmacy on that day but in a New Jersey pharmacy; 2) it shows she performs her duties as a pharmacist conscientiously and not at all as the witnesses claimed; and 3) it completely refutes the idea that the Plaintiff was ever remotely monitoring the pharmacies and calling them to remotely supervise them directing them to commit crimes.  This latter claim of holding the Plaintiff responsible for the misdeeds of others while she wasn't present has no basis under law, but the video evidence shows the ridiculous story that attempts to pass blame just isn't remotely true.

The evidence confirms the Plaintiff's actual and factual innocence.  The Plaintiff's actual and factual innocence can be shown through an analysis of the transcripts of the trial and all the pretrial motions and through an analysis of all the evidence. Such an analysis will be presented below because the Plaintiff does not want to leave it as mere conjecture that if they had done due diligence that the wrongfulness of the conviction would become clear. Rather, the Plaintiff feels it is important to demonstrate her actual and factual innocence at every opportunity and in no uncertain terms.

The judge ignored and withheld evidence of the Plaintiff's actual and factual innocence as well as ignored defects in the indictment, the pharmacy records, and other pertinent issues, detailed in this motion and as indicated in her 2255 Motion, her Recall to Mandate, and her Rebuttal to Government's Memorandum of Law of the United States of America in Opposition to the Motion of Lena Lasher Under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Her Sentence and in Opposition to her Supplementary Motions,   but also with the suppressed exculpatory video recording evidence to contradict the government and its witnesses' false testimonies; thus, to overturn the plaintiff's wrongful conviction.

The exculpatory suppressed and withheld video recordings evidence refutes the Prosecution and their witnesses claimed the Plaintiff was in New Jersey: remotely monitoring, supervising, and directing employees in

the PA stores to commit the crimes. The Prosecutors specifically stated that the video evidence showed the Petitioner remotely monitoring and remotely directing workers in Pennsylvania pharmacies to commit the alleged acts. But the Prosecution never presented that video evidence. They instead suppressed it and the Judge withheld it. Unsurprisingly, the video shows the Petitioner busily working in a New Jersey Pharmacy, not remotely monitoring or supervising employees in the other stores, as the prosecution claimed.  Most importantly, if the Plaintiff violated the law, the Prosecution would have used the video recording against her. Because the government knew that she did not break any law, they suppressed the video recordings from her despite referring to it at trial as if it was damaging evidence.  This exculpatory evidence could have exonerated her and is a clear violation of Brady as well as a violation of Plaintiff's 5th Amendment Right (Due Process). Yet, the judge, knowing it existed, knowing it was mentioned frequently at trial, and knowing the Plaintiff requested a subpoena for it, failed to request that evidence to have a chance to review it.

   The matter at hand is the actions taken by the Plaintiff took place and on other dates the Petitioner was working.  The **video evidence is superior so thoroughly and completely that no jury could convict the Plaintiff** because it shows exactly what the Petitioner was doing both on dates where she is accused of committing crimes and her conduct at work in general, whereas the testimony about her actions and how she conducted herself in her profession are subject to individual biases. In this case the video evidence shows none of what Prosecutors or its witnesses claim on the dates cited in the indictment. It directly refutes testimony and the prosecutors description of the video evidence spoken to, but not shown to, the jury.

   The video recordings, work schedule, time cards, and EZY passes show she was not present on the alleged days of the criminal activity (6/1/2012, 6/12/2012, 7/16/2012, 7/17/2012, 8/13/2012, 8/16/2012, 8/27/2012, and 10/2/2012), and the lack of her presence on October 2, 2012 when oxycodone was dispensed to allegedly "unkempt" individuals. The factors present in plaintiff's case requires the accused to be present at the pharmacy at the time the drug was shipped on the dates referenced. The Government has a copy of the work schedule from the Hellertown Pharmacy (HP) and Palmer Pharmacy & Much More (PP) showing the Plaintiff was not at work during the dates and times of the shipments referenced. First, the governing law (PA 27.12(b)(2) and the criminal statute 21 U.S.C. Sec. 321 (g)(1), 352(a), 352(c), 353(b)(1), 353(b)(4)(A), 21 U.S.C. Sec. 331(a) and 333 (a)(2) REQUIRE the accused to be present at the pharmacy at the time the specific prescriptions

in question were filled. Also, the governing pharmacy law protects a pharmacist from being held liable for another's actions. Numerous pharmaceutical law and protocol support the Petitioner's testimony while impeaching the testimony of Prosecution witnesses and one of the main contentions of the prosecution's case. The lack of ability to present that critical video evidence, while the government asserted the knowledge of it's existence further undermined the truth and advanced the perjured testimony. See Demarco v United States 928 F.2d 1074 (11th cir. 1991). The failure for the prosecution to correct perjured testimony is ground for the reversal of conviction.

The Prosecution and their witnesses also claim the Plaintiff was in New Jersey: remotely monitoring, supervising, and directing employees in the PA stores to commit the crimes. The Prosecutors specifically stated that the video evidence showed the Petitioner remotely monitoring and remotely directing workers in Pennsylvania pharmacies to commit the alleged acts. But the Prosecution never presented that video evidence. They instead suppressed it and the Judge withheld it. Unsurprisingly, the video shows the Plaintiff busily working in a New Jersey Pharmacy on all of the dates in question, not remotely monitoring or supervising employees in the other stores, as the prosecution claimed.

The prosecution and its witnesses claimed the Petitioner did not count pills, reused medications, improperly labeled and stored medications. However, the admittance of vastly superior video evidence will show that the Plaintiff follows rules and regulations of pharmacy law, properly handling pills and prescriptions, labeling and storing and destroying medications properly, and dispensing medications with valid prescriptions which were verified by doctors, all contradicting the prosecutors' witnesses sworn testimony.

The video recordings will further prove the drug "butalbital" NEVER existed in the pharmacies.

The best evidence rule (Evidence SS424-documents contradicting testimony) rests on the fact that a document is a more reliable, complete, and a more accurate source of information as to its contents and meaning than anyone's description; this is no less true as to the extent and circumstances of a contradiction, contained in the document, to a witness' testimony, where the alleged contradiction relates not to collateral matters but to the incrimination of a defendant in a criminal case.

The Government claimed "given the overwhelming evidence of her guilt, including her extensive perjury and the testimony of multiple lay witnesses with first-hand knowledge of her criminal actions and

directives" However, the best evidence rule, the suppressed exculpatory video recording, proved the Plaintiff did not perjured and that it was the "testimony of multiple lay witnesses (Government's witnesses) who committed the perjuries.

"We hold that the accused is entitled to the application of that rule, not merely because it will emphasize the contradiction to the jury, but because it will best inform them as to the document's impeachment weight and significance...the alleged contradiction to this witness' testimony relate not to collateral matters but to the very incrimination of petitioners. Except the testimony of this witness be believed, (pg.455) this conviction probably could not have been had. Gordon v. United States 97 LED 447, 344 US 414.

**III. The Government claimed Newly discovered evidence Pennsylvania Board of Medicine** (Docket Entry No. 10 at 16-18) document "is baseless". However this newly discovered evidence should be granted because it is the most extraordinary circumstances (United States v. Parkes, 497 F.3d 220, 233 (2d Cir. 22007) in that:

> 1. Lasher demonstrates that the evidence could not have been discovered through the exercise of trial attorney 's due diligence before or during trial because trial attorneys were incompetent to begin with.
> 2. facts...from which the court can infer due diligence on the part of the (the defendant] to obtain the evidence ; again trial attorneys were incompetent to attain the aforementioned.
> 3. The evidence is material because it proves Prosecution and its witnesses lied at the Plaintiff's trial.
> 4. The evidence is not merely cumulative or impeaching
> 5. The evidence would clearly result in an acquittal." United States v. Owen, 500 F.3d 83, 88 (2d Cir. 2007)(citations omitted).

The Court claimed Lasher "(i) filled and directed another to fill prescriptions for Dr. Haytmanek not withstanding that he had written those prescriptions for himself, and (ii) then forged and back-dated prescriptions to cover up what she had done. Again, the Court violated pharmacy law, and that Lasher was acquitted of witness tampering and thus anything Goloff said is declared MOOT because he perjured himself at the plaintiff's trial; the Plaintiff did not directed another to fill prescription for Dr. Haytmanek and the Plaintiff can not be held responsible for other pharmacist's actions, as per the governing pharmacy law (PA 27). Further, the law does NOT prohibit Dr. Haytmanek to write prescriptions for himself. Further, as detailed below, evidence of a Bates document (exhibit on file with the District Court) proved the Plaintiff did not "forged" ANY prescriptions.

Further, the Government claimed "Whether Dr. Haytmanek was in fact an addict is besides the point. However, Dr. Haytmanek was declared by the Government and its witnesses as being an addict is CLEARLY a

point in that the Government and its witnesses perjured at the Plaintiff trial by declaring that the Plaintiff

dispensed to Dr. Haytmanek, an addict. However, clearly the Government knew that the Pennsylvania Board of

Medicine exonerated Dr. Haytmanek as being a drug addict (See Exh E – Exhibit is on file with the District

Court). This in itself would result in Lasher's acquittal.

A. The Plaintiff was held under the creation of false standards of violating the controlled substances,

the "other acts testimony" that was highly prejudicial, but also not provable to be to completely false testimony,

Oxycodone and Opium prescriptions that not dispensed via the fulfillment pharmacy but to local walk-in

patients, Dr. Cochran's statements as detailed below, concerning the judicial proceeding is detailed below.  28

U.S.C. Sec 455(a) requires that the Judge disqualify herself. In re James J. Bulger, 710 F.3d 42, U.S. App.

LEXIS 5143 No. 12-2488 (1st Cir. 3/14/2013); Aetna Life Insurance Co v. Lavoie 89 LEd 2d 823 475 US 813,

106 S. Ct 1580 (1986); Norris v. US, 820 F. 3d 1261 (5th & 11th Cir. 4/25/2016); Bracy v. Gramley 138 LEd 2d

97, 520 US 899 (1997); Withrow v. Larkin 43 LEd 2d 712, 421 US 35; Re Murchison and John White, 99 LEd

942, 349, US 133 (5/16/1955). DEMODULATION, INC. v. USA Case No. 1:11-cv-00236-SG, August 1, 2013, KENSINGTON

INTERNATIONAL LIMITED and SPRINGFIELD ASSOCIATES, LLC, Petitioners In re:  D.K. Acquisition

Partners, L.P.;  Fernwood Associates, L.P. and Deutsche Bank Trust Company Americas, Petitioners No.  03-

4212, 03-4526,  December 18, 2003

B. Judge Buchwald specifically withheld physical evidence that she should have recognized as superior

to the testimony it refutes to protect questionable testimony, that can now be unequivocally be shown to be false,

from being impeached. The Judge ignored the Best Evidence Rule in withholding these pieces of evidence.  In a

trial made up of nothing but accusations and claims without any physical evidence, made by the government and

their witnesses, physical evidence that refuted those claims, by way of suppressed, withheld or redacted physical

evidence, should have been given priority and not redacted or withheld.  The judge made sure the physical

evidence was stripped of all power to reveal the truth or just withheld it entirely.

As detailed below, It also must be stressed just how prejudicial Judge Buchwald acts of withholding

physical evidence that contradicted witness testimony was: she decided prejudged that the witness testimony

should be heard by the Jury and that physical evidence that makes that testimony questionable should not be

considered by the Jury.  She took the matter out of the hands of the Jury and made their decision for them.  She

did this with the Bates document, with faxes from the Doctors, with emails that showed the doctor did in fact approve changes to prescription in spite of his testifying otherwise and knowing that the doctors were only testifying to avoid their own jail time for other crimes. Her acts were prejudicial. She went so far as to make sure that the Jury did not hear the pharmacy employees were reprimanded, by "striking" the Plaintiff's testimony on the stand and redacting physical evidence of the reprimands. There is only one reason to do and one result from doing this: prejudice.

C.  Judge Buchwald helped attain a wrongful conviction, while ignoring the Best Evidence Rule, by withholding Bates Document 010085 that shows the prosecution and its witnesses knowingly made false accusations that the Plaintiff forged the opium tincture prescriptions.

Much of the trial focused on opium tincture prescriptions for Dr. Haytmanek written by Dr. Cochran. Dr. Haytmanek is a patient suffering from chronic diarrhea and the opium tincture is an appropriate medication indicated for that ailment.  Prosecution's witnesses Steven Goloff actually filled 17 of the 20 of these prescriptions.  At some point, Steven Goloff decided to frame Dr. Haytmanek by reporting him to the Pennsylvania Board of Medicine for being a "drug addict" who obtains his drugs illegally.  At the Plaintiff's trial, the prosecution and 5 of their witnesses, Pharmacy Inspector THOMAS BAT (a Pennsylvania State Board executive official), pharmacists Steven Goloff and Daniel Geiger, technicians Albert Buck and James Barnes, framed the Plaintiff by falsely accusing her of forging these prescriptions and illegally dispensing to Dr. Haytmanek whom they called "an addict".  Evidence confirming that the Plaintiff did not forge any Opium prescriptions for Dr. Haytmanek was withheld from the jury (Bates document 010085, T. 1939-1942).  The trial judge knowingly allowed false testimonies of the Plaintiff forging those prescriptions (Goloff T.832).  Even worse, AUSA Richenthal and Greenberg in their summation reiterated this false accusation of forgery telling the jury the Plaintiff forged Dr. Cochran's prescriptions(AUSA Greenberg's summation T.1815).  These perjuries were made more effective by the District Court's decision to withhold the physical evidence that showed these lies for what they are. Further, the Trial Judge, presuming the role of a handwriting analysis expert witness from the bench, flatly declared the Plaintiff forged Dr. Cochran's prescriptions. More damagingly, the story they made up about these prescriptions were disproved at a hearing before the Pennsylvania Board of Medicine on October 8th, 2013,  19 months prior to the Plaintiff's trial (docket # 0335-49-B file no. 12-49-11424 Pg. 28).  It was a

matter of record nineteen months prior to the Plaintiff's trial that there was nothing wrong with with any aspect regarding Dr. Haytmanek's prescriptions, but the Prosecution and its witnesses insisted on putting on a show slandering her and the doctor.

To reiterate, Dr. Haytmanek was exonerated of any wrong doing and shown to not be a "drug addict" by the Pennsylvania Board of Medicine.  The Board of Medicine has far more expertise in addiction than the Judge, the Prosecutors, and their witnesses.  Their statements regarding "addicts" were never made from a place of expertise but out of their own prejudice.

If the Government's version events were true, the following would have had to happen:
1. Dr. Cochran's prescriptions pads would have to have been stolen,
2. The prescription pads would have to have ended up in the Plaintiff's possession,
3. Dr. Cochran would have to have failed to report these stolen controlled substances prescription pads,
4. Dr. Cochran would have to have been arrested for not reporting the stolen pads,
5. Goloff would have to have been arrested for dispensing 17 of these allegedly forged prescriptions,
6. The Prosecution would have a real crime to charge the Plaintiff instead of the nonsense that went on at her trial.

That none of this happened would seem to indicate that everyone on the Prosecution team knew it was all lies meant to slander the Plaintiff and deceive the jury. Demarco v. U.S. 928 F.2d. 1074 (11th cir. 1991). The failure to correct perjured testimony is grounds for the reversal of conviction.  Instead of correcting testimony she knew to be perjured, Judge Buchwald protected it from impeachment by withholding evidence and prevented the Jury from making up their own mind about the matter.  With the newly discovered PA Board of Medicine transcript, we have 2 pieces of evidence that show the Opium testimony was all lies.  By withholding the Bates document, Judge Buchwald ignored the Canons prohibition against partisanship.

D.      **Oxycodone testimony was both unduly prejudicial, and now provable to be completely false.**

The Prosecution and their witnesses told the Jury that on October 2, 2012, the Plaintiff rejected concerns over Oxycodone prescriptions allegedly being filled by "disheveled" "addicts". This testimony was "other acts" testimony, not part of the charges but meant to show if she was a kind of person to commit the allegations in the charges.  The testimony is very prejudicial, playing off stereotypes people have about drug addicts.

But, the entire story about these prescriptions were lies, and the Prosecutors knew it all to be lies because the video evidence shows the Plaintiff working in a different store in New Jersey on October 2, 2012.  Witnesses who claimed to tell the Plaintiff about people who looked high lied, because she wasn't there. The pharmacist

filling the prescriptions was Steven Goloff. If there was anything wrong with those prescriptions, he would have to deal with it. Instead, they made up a story blaming the Plaintiff, and the prosecutors suppressed the video evidence that showed it all to be lies. The "other acts" Oxycodone and Opium testimony, does show what kind of a person the Plaintiff is: she is the kind of person the prosecutors had to knowingly lied about.

This testimony, along with the Opium testimony that is also now proven false, are not just prejudicial but the acts they falsely described are far worse crimes than the acts alleged in the charges. By presenting this testimony that was known to be false by the prosecutors, it is likely that the jurors were predisposed to find the Plaintiff guilty and may have found her guilty because of this testimony and not the testimony regarding the charges, especially in light of how ambiguous the charges are. The Judge also knew that the Opium testimony was false through the Bates document she withheld. She made sure the jury was deprived of physical evidence, and prevented them from making up their own mind about the evidence. She also knew that both these sets of testimonies were presented with not a single shred of physical evidence. She allowed the jury to be presented accusations with no evidence to back it up, and she did this not just with the other acts testimony but also all the other testimony. Although Judge Buchwald may not have known at the Oxycodone testimony was entirely lies, had she not withheld the video evidence, she would have known it was all lies before sentencing. Instead it took years and a FOIA request to get the videos. The videos refute many of the prosecutions claims. With regard to the Oxycodone testimony it shows it all to be false, and considering there was no evidence presented that linked the Plaintiff to them other than testimony, it is clear that Judge Buchwald allowed unduly prejudicial testimony for the sole purpose finishing off the last defendant in her alleged narcotics conspiracy where the acts alleged were not crimes and not in violation of the law cited in the charges.

The aforementioned testimonies intentionally misled the jury; there were no evidence of any addicts obtaining those 2 prescription drugs, except for the Government's witnesses prejudicial profiling. The third Circuit has held that profiling testimony gave rise of a substantial risk of miscarriage of justice. Commonwealth v. Horne 88 Mass. App. Ct. 1109 (2015) Cert granted. These testimonies were highly prejudicial and irrelevant since the Petitioner was **not** on duty at Hellertown Pharmacy on October 2, 2012. Herring v. New York, 422 US. 853 (1975). It was the Prosecutors' witness, Steven Goloff, who, on October 2, 2012, was the pharmacist on duty who dispensed oxycodone prescriptions to "alleged addicts".

## Argument 4.  Lasher' Motion to Amend Judgment

The Government claimed that Lasher's Motion to amend judgment is meritless. Their reasoning is weak. They only referred to the Court's rejection of the Plaintiff's argument about Fioricet. The Plaintiff maintains that Fioricet is not a controlled substance and is looking forward to where and when the Attorney General made it a controlled substances because that is how drugs are made controlled substances. The fact that the judge and the prosecution felt it has to call it by one of its components show their need to deceive the jury in order to convict her. Nothing the prosecution or the Judge said about Fioricet should be taken seriously because they didn't trust the jury to even hear the words Fioricet; they lied to the jury. They have been lying the whole time and they have yet to show when and where the Attorney General made Fioricet a controlled substance. Richenthal want to pretend away   the fact that they also lied to the jury about tramadol and that tramadol also did not require a face to face prescriptions standards. He also want to pretend away the fact that he had no evidence whatsoever that show the Plaintiff was guilty of anything. All he had were people who got on the stand claimed they committed crimes themselves and then claimed the Plaintiff made them do it. Richenthal has never cited a law that holds the Plaintiff responsible for crimes confessed to by others.   He also ignores the fact that he knowingly presented lies to the jury about the oxycodone and opium prescriptions. the Plaintiff has shown quite clearly that the judge indulge the prosecution in all of these deceptions. The fact that Richenthal does not address any of this and thinks he can hide all of it behind the lie that made Fioricet a controlled substances in judge Buchwald's courtroom is ridiculous. He does not argue against any of this because to address it would expose him and his misdeeds.

The detail accounts provided both above and below clearly proved the District Court is biased against t the Plaintiff and therefore she must be disqualified due to her usurpation of administrative and legislative powers .

A.  It is obvious that Judge Buchwald acted improperly over the entire course of these criminal proceedings by looking at the transcripts of all the events in these criminal proceedings and reading the law.  We detail these events here to show to anyone reading how Judge Buchwald has shown herself to be too biased and too deeply invested in her usurpation of power, to preside over this civil case.  The Government knew this when they requested her by name.

B.  Judge Buchwald's betrayal of the law is a betrayal of hard-working conscientious health care

professionals who are subject to wrongful prosecutions and convictions from partial readings of the law by Judges and Prosecutors who choose to "go rogue" and ignore the law.

The description of some of Judge Buchwald's misconduct in her dealings with the Plaintiff make it clear that she violates Canons 2 and 3 on a regular basis. Specifically she violated them so that she could misconceive the legal definition of the word "**drug**" to rename Fioricet to something more of her liking. She ignores the vast majority of the Controlled Substance Act to make it look like she's justified in treating Fioricet like a controlled substance, in the absence of the Attorney General making it so. Her statements, and her odd conversation with AUSA Richenthal show her disregard for the Attorney General's role and the requirements for findings to be made on the record and the adherence to Title V Section 5. She just takes it upon herself to make it a controlled substance in her court room. She also ignores that Tramadol was not a controlled substance at the time of dispensing. She holds the Plaintiff to a face-to-face standard, and to the standard applicable to controlled substances when it is the wrong standard to apply.

The aforementioned were just a few issues which shocked the conscience, and if the jury knew of the aforementioned, the Plaintiff would have been exonerated. Unfortunately Judge Buchwald violating the Plaintiff's constitutional rights and ignored official executive's committing fraud. She withheld the exculpatory video recordings, and knowingly allowed perjured testimony, to obtain a conviction. Her actions warrant refusal.

The Federal Courts are not free to deviate from the statutes, which are enacted by Congress. Legislation lays down laws or rules. Administration carries those laws into effect. The judicial function is "to carry out the purposes of the statue, not to AMEND it." Miller v. US 79 LEd 977 294 US 435 (1935). "It is not within the power of the Court to "amend the governing pharmacy laws" on the ground that the administrative power conferred on the" State Board of Pharmacy for all pharmacists to abide by. Lamber Run Coal v. Baltimore & Ohio R. Co. 66 LEd 671, 258 US 377 (1922).

The test for recusal under Sec 455(a) is whether it was clear that a reasonable person, with knowledge of all the facts, might question the Judge's ability to remain impartial in hearing the case. Additionally Judge Buchwald's undisputed "personal knowledge of disputed evidentiary facts concerning the Proceeding" requires Recusal Under the Express Terms of 28 U.S.C. 455(b)(1)

Judge Buchwald will not relent in her bias against the Plaintiff. She must not preside over this case. For example, Judge Buchwald has exhibited extreme bias against the Plaintiff in the Plaintiff's criminal proceedings from the very beginning of the pretrial phases, right up through till today. On two occasions during the trial one of the Defendants called for a mistrial, both over Judge Buchwald's withholding of physical evidence that showed the Prosecutions witnesses had committed perjury on the stand. Those are only 2 of the prejudicial acts the Judge engaged in.

The Government probably know better than the Plaintiff just what a total train-wreck Judge Buchwald insisted on creating in order to ensure a conviction. That the Prosecutorial misconduct directly aided her, indicates that the Government fully expect Judge Buchwald would rule that of course the Government did "not suppress the video recording, maintaining her total disregard for the facts and the law that she prejudiciously displayed at the Plaintiff's trial. Together, as Prosecution and Judge, they will protect each other against the Plaintiff. Simply put: Judge Buchwald will most assuredly dismiss this civil action, or preside over a trial that she actively and intentionally rigs against the Plaintiff, just as she actively and intentionally rigged the criminal trial against the Plaintiff. She will do so to protect herself first and foremost, and the Prosecution realize that in this case Judge Buchwald's self-interests and their own are aligned. **She has common cause with the Prosecution against the Plaintiff,** Further, the Defendants' unethical conduct is NOT MOOT; it must be exposed.

The Plaintiff, Lena Lasher, sincerely believes that she can justifiability rely on the United States Supreme Court case Haines v. Kerner 404 U.S. 519 (1972), which clearly states that "all Pro-Se litigants must be afforded the opportunity to present their evidence and that the Court should look to the substance of the complaint rather than form."

CONCLUSION

For the foregoing reasons, **Judge Buchwald MUST recuse herself** from all of the Plaintiff's further and past motions, conviction and judgment; the Plaintiff's complaint MUST be granted in its entirety, to allow for the interests of justice, to protect the integrity of the Court's processes and the Plaintiff's due process rights.

Respectfully submitted,   *Lena Lasher*   Date: October 6, 2018

Lena Lasher, Pro-se Plaintiff, 16 Patton Street, High Bridge, New Jersey, 08829

CERTIFICATE

The Plaintiff, Lena Lasher, hereby certify that she has this 6th day of October 2018 caused a copy

of the foregoing "Rebuttal to Government's letter of September 26, 2018" upon the persons and in the manner

indicated below which service satisfies the requirements of NY. R.A.P.:

Service by first-class mail, postage prepaid, addressed as follows:

Clerk of the Court Pro                                    US Attorney Geoffrey s. Berman
United States District Court                              US Attorney Southern District of New York
Southern District of New York                            One Saint Andrew's Plaza
Daniel Patrick Moynihan United States Courthouse          NY, NY 10007
500 Pearl Street
New York, NY 10007

Respectfully submitted,                                  Date: October 6, 2018

Lena Lasher, Pro-Se, 16 Patton Street, High Bridge, NJ 08829

Elena Lasher
16 Patton St.
High Bridge NJ 08829

RECEIVED
2018 OCT -9 PM 4:47
CLERK'S OFFICE
S.D.N.Y.

U.S.M.P3
SDNY

PRO SE

Clerk of the Court
United States District Court
Southern District of New York
500 Pearl Street
NY NY 10007



US POSTAGE PAID
FCM LG ENV
LIBERTY CORNER, NJ
07938
AMOUNT
$2.68
R2305K136588-03

1000

10007

2018 OCT 01 AM 10:52
SDNY DOCKET UNIT
RECEIVED